# Robt. J. Young and Susan, his wife, *vs.* Louis Mackall, Jr.

An express promise to pay a bond barred by the statute of limitations does not revive the remedy *on the bond*, but enables the party to maintain *assumpsit* on the *new promise*, and to give the bond in evidence as a *consideration* for the promise.

Where full proof is demanded, *ex-parte* depositions in support of a claim are insufficient to establish it.

Until proof of the *existence* of a lost writing be furnished, secondary evidence of its contents is wholly inadmissible.

Where proof is taken under an order of court requiring notice, it must appear *upon the face* of the return that the *place* and day designated in the *notice* have been complied with.

Where a commission is silent as to the time and place of its execution, the *notice* governs in these particulars, and it is just as requisite the return should show a compliance with the terms of the *notice* as to place and day, as if they had been designated in the *commission*.

To establish the right of a party to the use of a commission, it is incumbent on him to show that its execution has been in compliance with its terms; such is the condition on which it is granted and on which only it can, apart from consent of parties, be made available.

Under the act of 1832, ch. 302, a general exception to the admissibility of the evidence or the competency of the witness, brings before the court the whole question of admissibility.

To render an exception under this act available, all that is required is that it be sufficiently definite to apprize the opposite party of the particular witnesses or evidence designed to be excepted to.

It is competent for an executor to agree that an order by which certain claims of his testatrix had been allowed, be rescinded, so that the plea of limitations could be interposed; there is no principle interdicting him from making such an agreement, unless it can be shown he acted from fraudulent motives.

The answer of a defendant in one case having no relation to or connection with another, can only be used and regarded *as evidence* in the latter cause.

A promise to pay a bond, against which the statute of limitations has run, made more than nine years before the filing of the claim, is itself barred by limitations.

When the statute of limitations once begins to run, it continues to run notwithstanding any subsequent disability.

The right of action on one of two bonds accrued in 1834, and on the other in 1835, and the obligee died in 1837, during which year her executor filed a

bill against the obligor, which suit, after answer filed, abated by the death of complainant in 1841. The obligor died in 1846, and letters *d. b. n.* on the estate of the obligee were granted on the 6th of October 1849, and the claim was filed on the 24th of the same month. HELD :

That as the statute commenced to run in the lifetime of the obligee, none of the circumstances subsequently occurring could stop its operation; where a suit terminates by abatement and is not revived, it takes no time out of the statute.

Trusts which are exempt from the operation of the statute of limitations are technical and continuing trusts, which are not at all cognizable at law, but fall within the proper, peculiar and exclusive jurisdiction of courts of equity.

APPEAL from the Court of Chancery.

This appeal was taken from several orders of the chancellor, excluding claims Nos. 4, 5, 6 and 45, filed against the estate *of Thomas* Mackall, deceased, which had been sold under the proceedings in this cause for partition amongst his heirs at law.

The *first three* were claims of Anne R. G. Mackall, a sister of the deceased, and were, after various proceedings, allowed by an order of the chancellor, dated the 21st of July 1849. The claimant by her will, executed in August following, bequeathed these claims to her niece, and died about the 1st of September of the same year, having appointed the appellant, Young, her executor. On the 17th of October of the same year, an agreement was filed in the cause, signed by Young, as executor of the deceased claimant, and the solicitor of the appellees, that the order allowing these claims be rescinded, "and that the said claims shall stand as before such order." Upon this agreement an order passed rescinding the previous one allowing the claims, and the appellees then interposed the plea of limitations, and other objections.

The *last*, (No. 45,) is a claim of Anne Mackall, another sister of the deceased. The history of this claim, as well as that of the preceding ones, with all the material facts in the case, is fully given in the opinion of this court, and also in 3 *Md. Ch. Decisions*, 398, where the several opinions of the chancellor are reported.

The cause was argued before LE GRAND, C. J., MASON and TUCK, J.

*Daniel C. Digges* and *Thomas G. Pratt* for the appellants.

1st. As to claims Nos. 4, 5 and 6. The exception to the proof taken in support of these claims is, that "it *was* taken irregularly and without due notice." The form of this objection casts the *onus* upon the exceptants to show *affirmatively* that the proof was not taken at the place designated in the notice, as it does not appear from the depositions that they were taken at any *other place.* See on this subject 1 *Gill*, 98; 1 *H. & J.*, 1, *Collins vs. Elliott,* where the form of the objection was, that it "*did not appear*" that the depositions were taken at the place specified in the notice. The act of 1832, ch. 302, requires a specification of the points upon which the party bases his objection—the *quo modo* the testimony was irregularly taken must be stated in the exception itself. *Md. Ch. Pr.*, 196. 7 *G. & J.*, 202. But again, these claims had been allowed by the order of the chancellor, and the claimant *subsequently* devised them to her niece, an infant. Now can such a decree, under such circumstances, be opened for the purpose of letting in the plea of limitations, because counsel misunderstood his clients' directions? A court of equity will not permit an executor to control or set aside such a decree. 1 *Story's Eq.*, secs. 423, 593, 600. 2 *Kent's Com.*, 646, 647.

2nd. As to claim No. 45. The single bills which constitute this claim matured in 1834 and 1835. It is conceded the claim is proved, and the only question is, whether the statute of limitations is a bar? The obligee, Anne Mackall, died in 1837, and in less than a year thereafter her executor filed a bill against Thomas Mackall, the obligor, who answered in 1840, admitting his indebtedness, and filed copies of the notes, and says he is prepared to pay them, but insists he should be credited with a legacy left him by his sister. This suit abated in 1842 by the death of the executor, the complainant, and no administration was taken out on the estate of Anne from that time until 1849, when Young became administrator *d. b. n.*, and immediately filed the claim in this cause. Thomas Mackall died in 1846. Under such circum-

stances the statute is not a bar. Where a suit is brought *before* the statute bars, and abates or goes off without the assent of the plaintiff, the party has until there is some one in *esse* capable of suing. 1 *H. & J.*, 337. *Angel on Lim.*, 334. 7 *H. & J.*, 14. 4 *H. & J.*, 393. 3 *Md. Rep.*, 366. 11 *G. & J.*, 218. But this is a claim to which the statute cannot in any event apply. Anne Mackall leaves her estate consisting in part of this debt to be held *in trust* by her brother, Thomas Mackall. There is therefore the strict technical trust necessary to take it out of the statute.

*Thomas S. Alexander* and *C. C. Magruder* for the appellee.

1st. The chancellor says the agreement to rescind the order put the parties in the same position in which they stood before it was passed, and by the chancery practice a party can rely upon limitations at any time he can except at all. 3 *Md. Ch. Decisions*, 409, 410. Nos. 4 and 6 are clearly barred by limitations. No. 5 is not proved. The objection is that the testimony was taken irregularly and without notice—the reasons assigned are not material—the *objection* is the important thing, and the reasons which come out in argument need not be stated in it. The *onus* is upon the party claiming the benefit of the depositions, and he must show by the face of the return itself that the proof was taken in conformity with notice. 1 *H. & J.*, 1 *Collins vs. Elliott.*

2nd. As to No. 45. The appellants rely on the answer of Thomas Mackall to a bill filed against him in 1838, in which he admits the debt as of that date. This is but a parol admission, and is moreover a *conditional* one, and that part which is for him must be considered as well as that which is against him. If the admission be accompanied with a statement that he is creditor instead of debtor you cannot infer a promise from it. But suppose it be *unconditional*, it was made in 1840, and was clearly barred in 1849, for it is well settled that a promise will not revive a sealed bill. There is no *trust*, but if there is, limitations apply, there being concurrent jurisdiction at law and in equity. 7 *Johns. Ch. Rep.*,

90. 3 *G. & J.*, 389.　7 *G. & J.*, 114.　11 *G. & J.*, 443. 3 *Md. Rep.*, 366.　Anne Mackall could have brought suit at law—there was no disability, for you may declare at law upon a lost bond.　Limitation runs from the accrual of the cause of action to the original creditor, and no subsequent disability interrupts its operation.　7 *H. & J.*, 14, *Ruff vs. Bull.  Do.*, 461, *Veasey vs. Bassett.  Angel on Lim.*, 57.　3 *My. & Cr.*, 499, *Freake vs. Cranefeldt.*　10 *G. & J.*, 50, *Lamar vs. Manro.* 12 *G. & J.*, 48, *Hall vs. Creswell.*　1 *Johns. Rep.*, 165.　2 *Bland*, 42, *Welch vs. Stewart.*

Le Grand, C. J. delivered the opinion of this court.

Under the proceedings for partition in this case, the real estate of Thomas Mackall was sold, and claims were filed by various parties against the proceeds.　The claims now before us for adjudication, are those designated in the auditor's account as Nos. 4, 5, 6 and 45.　We shall treat of them in the order in which we have referred to them.

*As to Claim No. 4.*　This claim is founded on a sealed bill of the deceased, Thomas Mackall, dated 22nd March, 1833, payable two years after date.　It became payable 22nd March 1835, and was filed on the 4th of November 1847.

To this claim two objections are interposed.　1st that it is not proved; and 2nd, that it is barred by the statute of limitations.　The second exception, we think, is well taken, and therefore it might be conceded without claimant's deriving any benefit from the concession that it has been fully proved.

The debt was due 22nd March 1835, and the claim was not filed until the 4th day of November 1847, and owing to the lapse of time, under the act of Assembly could not be pleaded or form the foundatition of a claim.　To take the claim without the statute of limitations, the declarations of Thomas Mackall, as testified to by George Denton, are relied upon.　He proves that he heard Mackall say he owed his sister money. There is something indefinite in this ; but were it explicit and to the effect that the deceased had expressly promised to pay the amount, it would not be sufficient to revive the remedy *on*

*the bond.* Its only influence would be to enable the party to maintain an action of *assumpsit* on the new *promise*, and enable him to give the bond in evidence as a *consideration* for the promise. The case of *Lamar vs. Maxro*, 10 *Gill & Johnson*, 50, establishes that it was not the object of the legislature in passing the statute of limitations of 1775, chap. 23, to prohibit, in all cases, the giving in evidence of a bill or bond where it might be more than twelve years standing, or in any case where it was not itself the foundation of the action; and that where an express promise is proved, to pay the balance, which might appear to be due upon a single bill, the bill itself, though over twelve years standing, may be offered in evidence, as furnishing the inducement to, or legal basis of, the promise. In the case before us the statute is pleaded by Louis Mackall, and the *bond* and not the new promise is the foundation of the claim. Such a case is directly within the operation of the act; we therefore concur in opinion with the chancellor, that even were it conceded *ex gratia*, that it had been proved, it is barred by limitations.

*As to Claim No. 5.* This is founded upon the copy of a single bill, the original of which is alleged to be lost, executed by Thomas Mackall, in favor of his sister Anne R. G. Mackall, for $705.65, dated the 15th of July 1837, payable in three years.

To support the claim, reliance was had upon the certificate of Thomas Mitchell, for William Hance, clerk of Calvert county court, certifying, that on the 15th day of July 1837, Thomas Mackall deposited in the clerk's office a note of that date drawn by him in favor of his sister Anne R. G. Mackall, for the sum of $705.65, payable three years after date, and the deposition of A. R. Sollers, clerk of Calvert county court, taken before a justice of the peace, stating that he had caused diligent search to be made for the original without avail.

Full proof having been demanded, the exception to the sufficiency of the testimony to support this claim, we are of opinion is well founded. The certificate of Mitchell is not

under oath, and, like that of Mr. Sollers, is wholly *ex-parte.*
This being so, there is no evidence competent to establish the
*factum* of the existence, at any time, of the bill alleged to
have been lost.   Until such proof be furnished, secondary
evidence of its contents is wholly inadmissible.

*As to Claim No. 6.*   This is an open account against
Thomas Mackall, for the hire of negroes, from January 1st
1834, to January 1st 1837.   Three years barred the remedy
on this claim.   The statute being pleaded and no evidence
having been offered to revive the remedy, it is consequently
unsustained, and must be rejected so far as exceptant is con-
cerned.   In thus disposing of claims Nos. 4, 5 and 6, we of
course hold that the depositions taken in their support, as
well as in that of claim No. 45, are inadmissible.   That of
Dr. Parker, was taken without notice to the other party, and
those of Denton and Sommerville, do not appear to have been
taken at the house of John Sommerville, as required by the
notice.   It is said, however, by the counsel for the claimants,
that this is not necessary.   We do not so understand the
decisions.   In the case of *Collins' Lessee, vs. Elliott,* 1 *Har.
& Johnson,* 1, the general court expressly decided, "that it
ought to *appear by the depositions themselves* that they were
taken agreeably to notice, both as to *place* and *time,* or they
cannot be received as evidence, and that proof could not be
admitted to show that they were in fact taken according to
notice;" and this decision of the general court was affirmed
by that of the Court of Appeals.   But, it is supposed, the
decision in the case of *Calvert vs. Cox,* 1 *Gill,* 95, dispenses
with the necessity of a compliance with the terms of the
notice appearing on the face of the depositions.   It is true that
in that case the court held, it sufficiently appeared the com-
mission had been executed at the *time* and place mentioned
in the notice, although the *time of day* when the testimony was
taken was not set out in the return of the commissioners, the
place and day of the month only being mentioned.   Yet, it is
clearly to be inferred from the language of the court that they
did consider it necessary, in a case like the one now before

us, that the *place* and day designated in the notice should appear on the face of the return to have been complied with. In that case it was objected that the testimony was inadmissible, because the commission had been executed in Virginia, where, it was contended, the commissioners had no authority to act; and in support of the objection the cases of *Boudereau, et al., vs. Montgomery, et al.,* 4 *Wash., C. C. R.,* 186, and *Lessee of Rhoades and Snyder, vs. Selin, et al.,* 4 *Wash., C. C. R.,* 715, were relied upon. But our Court of Appeals held these cases not to be analogous to the one they were considering, because in those cases, *by the terms of the commissions they were to be executed at designated places,* and having been executed elsewhere, they were suppressed by the court. In the case of *Calvert vs. Cox,* the commission designated no place, but confided that matter to the sound discretion of the commissioners. In that, as in this case, the *notice* designated the place, and although the court there held it to be a sufficient compliance with the terms of the notice, to state on the face of the return the *place* and *day* on which the evidence was taken, they in no manner intimate the absence of such a statement, in regard to either of these facts, would not have been fatal to the admissibility of the evidence. So far from giving such intimation, it is plainly inferrible from their language, that it was their opinion such facts should appear on the face of the return. And we hold that where the commission is silent, as to the place and time, where and when it is to be executed, in these particulars, the notice is to govern, and that it is just as requisite the return should show a compliance with the terms of the notice, as to place and day, as though they had been designated in the commission. The reason is the same in both cases.

It is, however, objected, that under the act of 1832, chap. 302, the evidence is admissible, because there has been no sufficient exception to it. The exception to the testimony is, that it was taken irregulaily and without due notice. The alleged irregularity consists in the fact, that it *does not appear* to have been taken at the place designated in the notice.

47     v.4

The act of 1832, chapter 302, does not require an exception to the *want* or *insufficiency* of evidence, but merely to its *inadmissibility*. It does not, however, impose upon the exceptant, the obligation to do more than file a general exception to the admissibility of the evidence, or to the competency of the witness ; all it is necessary "to render such exception available is, it must be sufficiently definite to apprize the opposite party of *the particular witnesses, or evidence designed to be excepted to*," and this we think has been done in this case. The *evidence* is plainly enough designated by the exception, and this is all that is required.

The argument founded on the *form* of the exception, in our opinion, is not tenable. It is urged, that inasmuch as the words of the exception are, "because it it' does not appear that the depositions were taken regularly and after due notice," the *onus* is cast upon the exceptant, to show the irregularity and want of notice. In this view we do not concur. We have already said that we hold it essential, it should appear on the face of the return or deposition, that the terms of the commission or notice as the case may be, have been complied with. But independently of this, it is always incumbent on a party to establish his right to the use of a commission, to show its execution has been in compliance with its terms. A compliance with its terms is the condition on which it is granted, and on which it can—apart from consent of parties—be made available. A simple exception brings before the court the whole question of admissibility. The reasons assigned, or arguments used to establish its inadmissibility, can only be regarded as aids to the court, and opposing counsel, in the investigation of the point.

It may be deemed requisite that we should remark somewhat on the agreement, by which the claims that had been allowed by a decree of the court of chancery, were subjected to the plea of limitations.

It is said on the part of the claimant, that the statute was not properly pleaded by Louis Mackall; that the claim having been once pronounced on favorably by the chancellor, and the owner of it having died under the conviction that there was

no dispute in regard to it, and under such belief having bequeathed it as a legacy to her niece, a court of equity would not countenance an agreement by an administrator, which opened the decree and allowed the plea of limitations. We regard the agreement as allowing of the interposition of the plea ; the question, however, is, whether it was competent to him to enter into it, and whether it should be respected by a court of equity? We have no very satisfactory account of the motives which prompted the action of Mr. Young, but suppose it had been represented to him that, through inadvertence, the instructions of Louis Mackall had not been complied with, and that as it is the practice of the chancery court to allow of objections after the report of the auditor is made, it was but just that that right should be restored to the party who had lost it through the forgetfulness of his solicitor. But be this as it may, we know of no principle which would interdict the party from making such an agreement, unless it could be shown he had acted from fraudulent motives. The sections in *Story's Equity Jurisprudence*, relied upon by the solicitors for the claimants, to show the illegality of the agreement do not, in our judgment, sustain the position for which they were cited. They merely treat of the ground on which equity assumes jurisdiction, in matters wherein the interests of executors and administrators are involved.

*As to Claim No.* 45. This claim is founded on two sealed notes of Thomas Mackall, one dated the 24th December 1829, payable on the 24th day of December 1834, and the other dated the 22nd March 1833, and payable on the 22nd of March 1835. They were set up by Robert J. Young, administrator *d. b. n., c. t. a* , of Anne Mackall, and filed on the 24th day of October 1849. More than fourteen years elapsed from their maturity until the time of their being filed. The statute of limitations has been pleaded, which, confessedly, would bar a recovery on them, unless there be something connected with their history, to withdraw them from the operations of the statute.

From the proceedings, it appears that Anne Mackall,

died in the year 1837, and that on the 26th of August 1839, Joseph W. Reynolds, her executor, filed his bill against Thomas Mackall, alleging that the said Thomas was in possession of certain personal property belonging to the estate of his sister Anne, among which were the notes constituting this claim. On the 26th February 1840, Thomas Mackall filed his answer, in which he accounted for his possession of the notes and other effects of his deceased sister, and "offers to deliver the whole of said effects, upon the complainant's settling with him for his distributive share, as legatee under the will of his said sister." The case remained in this condition until 1841, when it abated by the death of Reynolds the complainant.

Thomas Mackall, died in the year 1846, and on the 6th of October 1849, Robert J. Young, obtained letters as administrator *de bonis non*, of Anne Mackall, and on the 24th of the same month, filed the claim in the case which had been commenced for the partition of the real estate of Thomas Mackall.

The answer of Thomas Mackall, filed on the 26th of February 1840, we regard—as did the chancellor—as merely evidence in this case. It was part of the proceedings in a cause having no sort of relation to this. Whatever effect it might have had, by way of estoppel in the case in which it was filed, had that case been proceeded in, it is not important to ascertain, for in this cause it can be but regarded as evidence, and as such, merely expresses a willingness, in the year 1840, to pay the amount on certain specified conditions. Nine years elapsed from that time until the filing of the claim in this cause, and as the promise could not have given a remedy on the bond, and in any event but an action on the promise, limitations would bar the latter.

One of the notes matured 24th December 1834, and the other on the 22nd March 1835. Anne Mackall died in 1837, and it is not denied that the statute commenced to run at the time when the notes respectively became due. Unless, therefore, there be something to stop the running of the statute, the remedy on one of the notes was barred after the 24th December 1846, and on the other, after the 22nd March 1847.

But, it is said, the suit of Reynolds against Mackall, having abated in 1842, the running of the statute ceased, at least until Young became administrator *de bonis non*, which was not until the 6th October 1849; and that as the claim was filed by him on the 24th of the same month, the statute constitutes no bar. This, clearly, is not the law of Maryland, whatever it may be elsewhere. The case of *Ruff's adm'r d. b. n., vs. Bull*, 7 *Harr. & Johns.*, 14, is directly in point. In that case the action was brought on the 3rd of March 1819, on a single bill, dated the 19th January 1779, and payable on demand. It appeared, from the pleadings, that Hannah Ruff, the obligee, died the 10th of September 1801, leaving two children who were minors, and that letters of administration were granted to Henry Walters, on the 30th of October 1801, and that he died the 20th July 1805. That on the 14th of November 1810, the defendant Bull, was appointed guardian to the minor children of Hannah Ruff, who were entitled to the whole of of her personal estate, but that no administration *de bonis non*, on her estate, was granted until the 25th of August 1818. On this state of facts, the plaintiff by his pleading claimed, that his right of action was not barred, because "twelve whole years had not elapsed from the date of the bill, or the time it became due, prior to the commencement of the action, *if the time be deducted during which there was no administration, from the whole which elapsed, and that the defendant ought not to avail himself of the time which elapsed, during the time he was guardian to the infant children.*"

The court sustained the demurrer to the replication, in which the facts we have given were set out; and did so upon the ground, that as the original obligee lived two years after the right of action accrued on the single bill, the statute had commenced to run during her life, and continued to do so notwithstanding the facts we have stated, which certainly are as strong as those relied on in the case now before us. The language of the court in that case is explicit. "It then appears," say the court, "that the right of action existed for more than two years, which might have been enforced by

Hannah Ruff, in her lifetime, and that her administrator had the power of compelling payment, for a period of more than three years before he died. The principle of law is indisputable, that when the statute of limitations begins to run, nothing will stop or impede its operation. It never does attach, unless there be some person in being competent to sue, but when that is the case, the legal bar to the recovery of the money will arise, unless legal steps are adopted to enforce payment within the period prescribed by law." They refer to the case of *Peck vs. Randall*, 1 *Johnson's Rep.*, 165, where they say, the "general rule is laid down to be, that when the statute of limitations once begins to run, it continues to run, notwithstanding any subsequent disability."

Under the principles established by this decision, the statute is obviously a bar to the claim. The right of action accrued on one of the notes in 1834, and on the other in 1835, while Miss Mackall, did not die until 1837. She had in the one case, two, and in the other, three years, to commence her action, and none of the circumstances subsequently occuring, could stop the operation of the statute, when it had once commenced running.

In the case of *Alexander and others, vs. Pendleton*, 8 *Cranch*, 462, the Supreme Court of the United States, recognized a principle which covers this case. It was there held, that "*where a suit terminates by abatement, and it is not revived*, such suit takes no time out of the act of limitations."

We concur in opinion with the chancellor, that the transactions between Thomas Mackall, and his sisters Anne, and Anne R. G. Mackall, do not constitute such a trust as to prevent the bar of the statute. The trusts, to use the language of Chancellor Kent, in the case of *Kane vs. Bloodgood*, 7 *Johnson, Ch. Rep.*, 90, "intended by the courts of equity not to be reached or affected by the statute of limitations, are those technical and continuing trusts, which are not at all cognizable at law, but fall within the proper, peculiar, and exclusive jurisdiction of courts of equity." In the case now before us, there was not such a trust, nor a trust of any kind, but even

had the transactions between Thomas Mackall and his sisters, constituted a *quasi* trust, so soon as it ceased to be a *continuing* subsisting trust—which would have been the case on the maturity of the single bills—the statute of limitations would have commenced to run, the cause of action being cognizable by a court of law. *Green, Exc'x of Green, vs. Johnson, et ux.*, 3 *Gill & Johns.*, 389.

For these reasons, we affirm the action of the chancellor, in regard to the claims involved in this appeal, and will sign a decree accordingly.

*Decree affirmed.*