TRUSTEES OF ST. MARK'S EVANGELICAL LU-
THERAN CHURCH *vs.* CAROLINE M. MILLER
ET AL.

*Promise to Pay Specialty Debt Barred by Limitations—Proof of Claim
Against Decedent's Estate—Competency of Witness.*

When the right to sue on a promise under seal to pay a sum of money has become barred by the Statute of Limitations, and thereafter the specialty debtor makes an express promise to pay the obligation, or the part thereof remaining unpaid, an action of *assumpsit* can be maintained upon such promise and the specialty is admissible as evidence of the consideration therefor.

In 1882, one Miller, executed a single bill promising to pay a sum of money to the trustees of a church one year after date with interest. Miller died in 1902 without having paid any part of the principal sum, but having paid the interest in full to 1896 and having made part payment of the interest down to the time of his death. The decedent's real estate was sold in an equity proceeding for the payment of his debts and the Trustees of the church asked for the payment of the single bill out of the proceeds of sale. The distributees of the estate relied upon limitations against this claim under Code, Art. 57, sec. 3, which provides that no specialty shall be good and pleadable, etc., after the debt is above twelve years' standing. The evidence in the case showed that in 1901 the obligor, Miller, said to the officers of the church that the note with interest was due to the church and that he wanted to sell a farm and pay the debt off; also on another occasion that he would pay the note so as to prevent any trouble. *Held,* that this evidence shows such an express promise to pay the debt as removes the bar of the Statute of Limitations.

After the specialty was filed as a claim in the above mentioned equity case and testimony was taken, an agreement of counsel was made that the testimony and all papers filed with the Examiner "shall be considered in the determination of the matter of said note, all informalities being

waived."   *Held*, that this agreement dispensed with the necessity, if any existed, of first establishing the right of the trustees to recover in a Court of law, or of presenting their claim in any special manner.

The trustees as parties to the note were competent witnesses to prove the new promise although the obligor was then dead, since under the Act of 1902, ch. 495, the incompetency of one party to a contract to testify when the other is dead was removed.

Appeal from the Circuit Court for Washington County (WITZENBACHER, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, PEARCE, SCHMUCKER and JONES, JJ.

*Emory L. Coblentz* (with whom was *Charles C. Waters* on the brief), for the appellants.

*Lewis D. Syster*, for the appellees.

JONES, J, delivered the opinion of the Court.

Ezra D. Miller, late of Washington County, deceased, executed in his lifetime, his obligation in writing and under seal as follows:

"One day from this first day of April, A. D., 1882. I promise to pay to Joseph Rohrer, John W. Brantner, John V. Rohrer, Henry W. Rohrer, John H. Poffenberger and Henry Clay Rohrer, Trustees of St. Mark's Evangelical Lutheran Church of Rohrersville, Washington County, Maryland, or their successors, or their order, or the order of their successors, five hundred dollars for value received with interest from first day of April, A. D., 1883. This note being given to said Trustees for the use and benefit of the pastor of said church and his successor in office; the interest thereof to be annually collected and paid over to the said pastor or his successor by said Trustees, or their successors, and the principal when due and paid over to be invested for his, the said pastor's use and benefit by said Trustees, and the annual interest thereof to be paid by them to the said pastor or his successor as aforesaid."

"Witness my hand and seal"

(Signed) Ezra D. Miller, [Seal.]

The obligor died in March, 1902. At the time of his death

no part of the principal of the debt evidenced by the foregoing writing obligatory had been paid ; but by endorsements of payments of interest thereon it appeared that the interest had been paid in full to April, 1896; and that subsequent to that date there had been partial payments of interest the last of which was made in 1902. The appellants, who were successors, as trustees, to those named in the said writing, brought in a claim against the estate of the deceased for the amount of the writing obligatory and the interest thereon for the time the same had not been paid. This claim was proved to, and passed by, the Orphans' Court of Washington County, and was then brought into the Circuit Court for said county for payment out of the proceeds of sale of the real estate which had been sold for payment of debts in aid of the personalty. The claim was excepted to by the widow and heirs of Ezra D. Miller, who set up and relied upon limitations against the claim.

To avoid the effect of limitations the appellants relied upon a new promise made by the deceased in his lifetime. Upon the question thus made both sides submitted testimony to the Court below and that Court sustained the exceptions of the appellees and held that the claim made by the appellants was not relieved of the bar of limitations upon the proof so submitted and made its decree accordingly. From that decree this appeal was taken. Without going into recitals from the record it may be briefly stated that it appears from the course and nature of the testimony, the agreement of counsel and the opinion of the Court below, that the main and fundamental question, which was intended to be, and which was, submitted to, and considered by that Court, and which formed the basis of its decision, was whether the appellants had been able to show such a new promise made by the obligor, Ezra D. Miller, to pay what remained due on the debt evidenced by the writing obligatory, which has been recited, as to enable them to enforce the claim thereunder against his estate as against the plea of limitations.

Our Statute of Limitations provide that no "specialty whatsoever, except such as shall be taken for the use of the State,

shall be good and pleadable, or admitted in evidence against any person in this State after the principal debtor and creditor have both been dead twelve years, or the debt or thing in action is above twelve year's standing" with a saving to persons under disabilities. It is settled in our decisions that it results from the terms of the statute just recited, that, when the period, fixed therein, for barring actions for the recovery of specialty debts has expired, and the bar of the statute has applied, no action can be maintained on the specialty itself as against the plea of the statute; but it is equally well settled that, if, after the specialty has become barred by the provisions of the Statute of Limitations, the specialty debtor makes an express promise to pay the debt specified in the obligation, or the part thereof remaining unpaid, an action can be maintained upon such promise to recover the amount so remaining unpaid, and the specialty can be used as evidence of a consideration therefor. In the case of *Leonard, Admr.,* v. *Hughlett,* 41 Md. 380, it was said by JUSTICE ALVEY, speaking for this Court (see page 388), "nothing less than an *express promise* to pay the amount due thereon, made after the statute had become a bar to the remedy on the bond itself will suffice to maintain an action of *assumpsit* to recover the amount due. In such case the bond, although the remedy thereon be barred by the statute, may be given in evidence, as the inducement to, or as explanatory of, and as furnishing the legal basis of the express promise to pay the amount remaining due on the bond. This has been expressly decided by the cases of *Lamar* v. *Manro,* 10 Gill & J. 50 and *Young* v. *Mackall,* 4 Md. 362." The same doctrine was announced and approved in *Wright, Exr.,* v. *Gilbert, Exrx.,* 51 Md. 146 (see p. 156.)

Now what was the proof of the new promise set up by the appellants? Mr. Young, a witness produced by them, testified that in the year 1901 he had a conversation with Ezra D. Miller in reference to the note or bond here in controversy; that he was one of a committtee appointed on behalf of the church named in the bond to talk about it with Miller—the interest being then in arrear; that the committee "laid the

matter before him and he acknowledged it was all right and the interest was back, " that he "said the note was all right; the note and interest he acknowledged was due the church and he couldn't pay it at that time, and that if we had to have the money we would have to push him; he had a farm and wanted to sell it and if we knew of any one who wanted to buy a farm to send them around. He wanted to sell the farm and pay the debt off. That is the sum and substance of it. We told him we didn't mean to push him." This witness further said in answer to questions "he (Miller) also admitted if he hadn't had so much bad luck with his son in-law he wouldn't be back with the interest on the note;" and "the language that he used was that he knew the claim was all right and just and he wanted to pay it and he was going to sell his farm and pay it." The testimony already quoted was substantially repeated in the further questioning upon cross-examination of the witness.

Another member of the committee, referred to by the preceding witness, testified that he was present on the occasion of which that witness was speaking and that "Mr. Young broached the question to him (Miller) about the interest on the note and he told us he was very sorry he couldn't pay it, that he wasn't able to pay it just now; but he said if we would push him for the money he would have to sell the farm to pay it;" and further testified that Miller "acknowledged the bill and said that he intended to pay it when he got able or could sell his farm." The appellants further proved by Mr. Maurer that he had a conversation in January, 1902, with Ezra D. Miller about the note or bond in question in which the latter said "he (Miller) was arranging to pay all his debts; if he could borrow money sufficient to pay his debts he would pay the note to the church with interest." This witness then further testified "he also said he would pay this note and interest so as to prevent any trouble." Mr. Maurer was pastor of the church mentioned in the bond in controversy at the time of testifying and at the time of the conversation to which he testified. The testimony of this last witness to the effect that the

obligor in the bond in question "said he would pay this note and interest so as to prevent any trouble" is sufficient to es - tablish an express promise of payment, especially when taken in the light of the other evidence to which reference has been made. Saying he would pay, &c., "to prevent any trouble" did not attach to the promise any condition but expressed only a reason for, and a consequence of, payment. What was said had direct and specific reference to the debt created by the bond. The testimony of the other witnesses referred to showed that the obligor always had this debt distinctly in his mind as an obligation and leaves no doubt as to his intention in regard thereto. This intention he formulated in what he said to the witness Maurer.

It appears therefore when the appellants, in 1903, brought the bond in question into the proceedings in the present cause as a claim against the estate of Ezra D. Miller they could have maintained an *assumpsit* for the claim so made. It is argued on behalf of the appellees that the right of the appellants to maintain an *assumpsit* on a new promise should have been established in a Court of law. If by this it is meant to challenge the jurisdiction of the Court below to pass upon the claim made by the appellants the appellees in raising such a question in this Court are in the position of asking the affirmance of a decree which they say the Court was without jurisdiction to pass. No such question was raised in the Court below as far as disclosed by the record. On the contrary there appears in the record as a part of the agreement of counsel "that the testimony returned by" the "examiner in equity, and all papers and exhibits filed with him as evidence in this cause and filed May 2nd, 1903, as well as all exceptions to said testimony, shall be considered in the determination of the matter of said note, all informalities being waived." The Court below was thus authorized and invited by both parties to consider and determine, upon the evidence submitted, whether there was any aspect of the case, as respected the claim made by the appellants, in which such claim could be sustained against the funds which the Court was administering.

The agreement referred to disposes, also, of the appellees' second ground of exception to testimony which is expressed in these words "the auditor cannot admit this note or distribute to it, if attempted to be put in simply as evidence of indebtedness supporting a new promise." When "all informalities" were waived it dispensed with any necessity, if such otherwise existed, for the appellants to present their claim in any special or particular form. The claim presented by them, upon the evidence, had the same standing in Court and before the auditor as any other claim resting in *assumpsit.*

The appellees further contend that the evidence to which reference has been made is not properly in the cause, because the same was not delivered by competent witnesses. Their testimony is excepted to on the ground that they were parties to the note or bond in controversy, the other party to which is dead. Without discussing the question whether these witnesses were such parties, and assuming that they were, it is sufficient to say it was ruled contrary to this contention by this Court in the case of *Duckworth* v. *Duckworth,* decided December 4th, 1903, 98 Md. 92, in applying there the Act of 1902, ch. 495, p. 718.

Being of opinion that there was error in the decree of the Court below in sustaining the exceptions of the appellees to the claim of the appellants which is the subject of controversy in this cause, and rejecting said claim we reverse the decree and remand the cause.

> *Decree reversed with costs to the appellants and cause remanded.*

(Decided March 22nd, 1904.)