626 A.2d 1055

**ALLIED FUNDING**

v.

**James S. HUEMMER, et al.**

**No. 1458, Sept. Term, 1992.**

Court of Special Appeals of Maryland.

July 2, 1993.

Barbara C. Blake (Kaplan & Kaplan, P.A., on the brief), Baltimore, for appellant.

William R. Lenck (William J. Blondell, Jr., Chartered, on the brief), Baltimore, for appellees.

Argued before MOYLAN, DAVIS and MOTZ, JJ.

MOYLAN, Judge.

The appellant, Allied Funding, a limited partnership, sued the appellees, James S. Huemmer and Charlot A. Huemmer, in the Circuit Court for Baltimore County for breach of a guaranty agreement. The circuit court ruled that limitations had run and entered summary judgment in favor of the appellees. Allied Funding has filed this appeal.

On April 4, 1975, the appellee James S. Huemmer, as President of Abby Insurance Corporation, executed a Security Agreement Chattel Lien and Confessed Judgment Note. The note secured a loan from the appellant, Allied Funding, to Abby Insurance Corporation in the principal amount of $52,-560. The loan was to be repaid in 35 successive monthly installments of $1,460 each (representing principal and interest), with a final installment for the balance due. On the same day, James S. Huemmer and Charlot A. Huemmer each endorsed the Security Agreement Chattel Lien and Confessed Judgment Note under seal, with full recourse to secure the payment of the note. In addition, each executed a Guaranty Agreement under seal, unconditionally guaranteeing the payment of the obligation of Abby Insurance Corporation to Allied Funding in the event of default.

Beginning in October, 1975, Abby Insurance Corporation began to miss payments. Allied Funding exercised its option under an acceleration clause in the security agreement, which provided that "[o]n non-payment due of any installment, all remaining installments at the option of the COMPANY shall become immediately due and payable without demand or notice of any kind." On November 28, 1975, Allied Funding had judgment by confession entered against the appellees,

individually, in the Superior Court of Baltimore City (now the Circuit Court for Baltimore City), in the amount of $52,216.90.

After the confessed judgment was entered, the appellee James S. Huemmer, beginning in February, 1976, forwarded payments to Allied Funding for the debt of Abby Insurance Corporation. The last payment was received by Allied Funding on July 26, 1976. It was a cash payment in the amount of $125 to replace a check tendered on June 17, 1976, which was returned by the bank due to insufficient funds.

On February 3, 1988, Allied Funding filed this action against the appellees for breach of the guaranty agreement. The parties agree that, since the guaranty agreement was under seal, the 12–year statute of limitations established by Md.Code Ann., Cts. & Jud.Proc. § 5–102(a) (1989) governs this claim. That section provides, in pertinent part:

"(a) *Twelve-year limitation.*—An action on one of the following specialties shall be filed within 12 years after the cause of action accrues ...:

(1) Promissory note or other instrument under seal;

(2) Bond except a public officer's bond;

(3) Judgment;

(4) Recognizance;

(5) Contract under seal; or

(6) Any other specialty."

The parties disagree, however, as to when the 12–year statute of limitations began to run.

A contract of guaranty is collateral to a primary or principal obligation. The guarantor agrees to pay the debt of another at maturity if that debt is not paid by the principal debtor. *Kushnick v. Lake Drive Bldg. & Loan Assn.*, 153 Md. 638, 641–642, 139 A. 446 (1927). Therefore, the statute of limitations on a contract of guaranty cannot begin to run until a right of action accrues on the principal debt. *Hodgson v. Burroughs*, 175 Md. 413, 428, 2 A.2d 407 (1938). The circuit court ruled that the statute of limitations on the note and the guaranty agreement began to run on November 28, 1975,

when Allied Funding obtained the confessed judgment for the full amount of the note. The court relied on *Santini v. Fritkin,* 240 Md. 542, 214 A.2d 578 (1965), which provides:

"With regard to a promissory note which contains a provision accelerating its maturity at the option of the holder upon the nonpayment of interest or principal or other default, the applicable rule of law is that the holder must take some affirmative action which indicates an election to take advantage of the acceleration provision and until such action has been taken the note does not become due and payable in advance of the time or times specified in the note. When, however, the holder takes positive action indicating that he has elected to exercise the option, then the full amount of the unpaid balance of principal and accrued interest becomes immediately due and payable and the statute of limitations begins to run from that time."

*Santini,* 240 Md. at 544–545, 214 A.2d 578.

The Court's reasoning, in the express terms of *Santini,* was that the holder (Allied Funding) took positive action indicating that it elected to exercise its option under the acceleration provision by obtaining the confessed judgment on November 28, 1975. The full amount of the unpaid balance of the principal and accrued interest became immediately due and payable on that date. That was the day, moreover, on which the statute of limitations began to run on the contract of guaranty entered into by the appellees.

The appellant, Allied Funding, contends that *Santini* is not applicable to this case and that the trial court erred in relying on it. Citing *Hooper v. Hooper,* 81 Md. 155, 31 A. 508 (1895), and *Burgoon v. Bixler,* 55 Md. 384 (1881), the appellant argues that the appellees'/guarantors' part payment after the judgment by confession had been filed fixed a new date from which the 12–year statute of limitations began to run. In its brief, the appellant contends that the new statute of limitations began to run on July 26, 1976, and that it had until July 26, 1988, to enforce the guaranty agreement. Since the instant

lawsuit was filed on February 3, 1988, the appellant contends that it is not barred by the statute of limitations.

There is, indeed, a surface plausibility to the appellant's argument. In *Burgoon v. Bixler,* the Court had said that "part payment by one of two or more joint and several makers of a note, ... if made before the Statute has attached, is sufficient to take the note out of the operation of the Statute as to all the makers; on the principle that the payment by one is payment for all. In such case the Statute runs from the time of the last payment." *Burgoon,* 55 Md. at 391–392. Similarly, in *Hooper v. Hooper,* which involved a guaranty agreement, the Court had said that where one of several parties jointly and severally liable for a debt "makes a new promise or a payment, either of interest or of a part of the principal before the bar of the statute has attached, this will prevent the statute from running as to the others, even though they be but sureties. Such promise or payments fixes a new date from which the statute begins to run." *Hooper,* 81 Md. at 173, 31 A. 508.

The flaw in the appellant's argument is its casual and uncritical analogizing of the twelve-year statute of limitations to the three-year statute of limitations and its failure to recognize the fundamentally different ways in which the Maryland law treats those distinct limitations. The difference between them is more than nine years; it is qualitative as well as quantitative.

The cases cited by the appellant—*Burgoon v. Bixler* and *Hooper v. Hooper*—merely recognize the rule that a part payment of principal or interest on a simple contract, before the limitations period has run, amounts to a voluntary acknowledgment of the existence of the debt, from which the law implies a new promise to pay the balance. *See McMahan v. Dorchester Fertilizer Co.,* 184 Md. 155, 157, 40 A.2d 313 (1944). Neither of those cases—albeit involving part payments—involved a part payment on a *specialty,* governed by a 12–year statute of limitations, such as we are dealing with in this case. Both cases involved an obligation to which a three-year statute

of limitations applied. In each case, each part payment during this three-year period constituted a new promise, which generated a new three-year limitation period. Therefore, the former limitation period became immaterial as it was superseded by a new three-year limitation period.

With respect to specialties,[1] to which a 12–year statute of limitations applies, however, the rule regarding the effect of part payment has always been diametrically otherwise. The Court of Appeals pointed out in *McMahan v. Dorchester Fertilizer Co.*, 184 Md. 155, 157, 40. A.2d 313 (1944):

> "It is a familiar rule that, while an action on simple contract, in order to escape the bar of the Statute of Limitations, must be commenced within three years from the time the cause of action accrued, a promise to pay a debt on simple contract, after it is barred by the Statute of Limitations, revives the remedy. Even a mere acknowledgement of such a debt will remove the bar of the statute, because if the debtor acknowledges the debt it is implied that he promises to pay. Furthermore, part payment of principal or interest is considered an acknowledgement.

---

1. The word "specialty" can cause at least initial consternation, because its use as a legal term of art bears little, if any, resemblance to its use in everyday speech. *Mattare v. Cunningham*, 148 Md. 309, 314, 129 A. 654 (1925), citing 26 Amer. & Eng. Encyc. of Law, p. 3, explained the term: "[A] specialty is defined as an obligation or contract under seal, but ... statute liabilities have been frequently termed specialties by the courts." *Gildenhorn v. Columbia R.E. Title*, 271 Md. 387, 397, 317 A.2d 836 (1974), quoted with approval *General Petroleum Corp. v. Seaboard Terminals Corp.*, 19 F.Supp. 882, 883–884 (D.Md.1937), wherein Judge Chesnut had observed:

   "This statute of limitations does not itself define what constitutes a specialty, nor is there any other Maryland statute so far as I am aware which does. It is a well-known term of the common law which in Maryland and elsewhere by judicial decision denotes a legal instrument under seal."

   Perhaps the best way to relate the term of art to ordinary linguistic usage is to consider contracts not under seal as "routine" and contracts under seal as "special," thereby making them "specialties."

   Interesting discussions of seals can be found in *Gildenhorn v. Columbia R.E. Title*, 271 Md. 387, 317 A.2d 836 (1974); *Mayor of Federalsburg v. Allied Contractors, Inc.*, 275 Md. 151, 338 A.2d 275 (1975), and *Warfield v. Balto. Gas & Elec. Co.*, 307 Md. 142, 512 A.2d 1044 (1986).

*Burgoon v. Bixler. But the section of the statute pertaining to specialties is given an entirely different construction. In the case of a specialty,* the Court of Appeals has repeatedly held that *an acknowledgement of the debt at any time during the twelve-year period will not arrest the operation of the statute ..."* (emphasis supplied) (citations omitted).

In *McMahon,* Judge Delaplaine traced the statute of limitations dealing with specialties in Maryland to the Acts of 1715, Ch. 23, § 6. *McMahon,* 184 Md. at 156–157, 40 A.2d 313. In its original form, it operated with inexorable finality. Its harshness manifested itself in *Trustees of St. Mark's Evan. Luth. Church v. Miller,* 99 Md. 23, 57 A. 644 (1904). In that case, Miller had given the church trustees a sealed note in 1882 and made payments of interest thereon until his death in March, 1902. Notwithstanding regular payments of interest, the Circuit Court for Washington County deemed the twelfth anniversary of the signing of the obligation on April 1, 1882 to be an absolute bar to any effort by the church trustees to make a claim against Miller's estate. The Court of Appeals reversed that decree and remanded the cause to the circuit court on purely technical grounds. Notwithstanding that reversal, "it is believed that the glaring injustice threatened in the case induced the Legislature, which was then in session, to amend the section pertaining to specialties, by inserting the *proviso* that every payment of interest shall suspend the operation of this section for three years after the date of such payment." *McMahon,* 184 Md. at 158–159, 40 A.2d 313, *citing* Acts of 1904, Ch. 414.

Notwithstanding *McMahon*'s characterization of the situation before the Court in *Trustees of St. Mark's v. Miller,* as "the glaring injustice threatened," its literal application of even the ameliorated law may have represented yet another instance of not merely "threatened" but actual harshness that led, in turn, to the next amelioration of the statute. Part payments had been made in the *McMahon* case and it was argued by the plaintiff that those part payments entitled it to the three-year grace period provided by the Acts of 1904. The *McMahon* Court, however, pointed out that the part

payments had been payments on the principal and not on the interest and, therefore, did not qualify the plaintiffs for the literal statutory exemption.

The Court of Appeals reasoned: "The Legislature imposes a salutary vigilance and puts an end to litigation. Accordingly, the Courts should refuse to give statutes of limitations a strained construction to evade their effect ... We conclude that, where the Legislature has not made an exception in express words in the Statute of Limitations, the Court cannot allow any implied and equitable exception to be engrafted upon the statute merely on the ground that such exception would be within the spirit or reason of the statute." *McMahon*, 184 Md. at 160, 40 A.2d 313.

■  The law was modified yet again to provide that the payment of either principal *or* interest could trigger a three-year suspension of the running of limitations. That amended law is now codified as subsection (b) of Md.Code Ann., Cts. & Jud.Proc., § 5–102 (1989). It provides:

"(b) *Suspension of time.*—A payment of principal or interest on a specialty suspends the operation of this section as to the specialty for three years after the date of payment."

Nothing, however, in § 5–102(b) remotely supports the appellant's argument that a part payment of principal or interest on a specialty, if it occurs before the 12–year limitation period has expired, resets the 12–year period from the date of that part payment. The appellant points to no authority for this proposition and makes no cogent argument in support of it. Indeed, if that were the case, the three-year suspension of time in § 5–102(b) would be unnecessary.

■  Perhaps realizing the illogic of such a contention, the appellant modified its position at oral argument. The appellant argued that, under § 5–102(b), the 12–year statute of limitations on a specialty is stopped for three years following a payment of principal or interest and then restarted again. We

have found no Maryland case dealing with this precise issue and we write on a clean slate.

In our view, the salutary effect of § 5–102(b) is simply to guarantee at least the same three-year period of limitations following the part payment of principal or interest on a specialty that the law has always provided for the part payment of principal or interest on a simple contract. The statute does not state that the 12–year statute of limitations on a specialty is stopped for three years following such a payment and then restarted but only that its operation, or application, is suspended for three years. Therefore, the 12–year statute of limitations on the specialty continues to run concurrently with this three-year grace period. In suspending the operation, or application, of the 12–year limitation period for three years after a part payment, § 5–102(b) has, therefore, significance only during the last three years of the 12–year period. Only during such time would its effect be to extend the limitation period. Until the limitations on suing under a specialty have reached the nine-year marker, that special period of grace that is triggered by a part payment and the larger period of grace still available under the statute would run concurrently.

We hold that the circuit court was correct in ruling that the 12–year statute of limitations on the guaranty agreement began to run when the confessed judgment was entered on November 28, 1975. The part payment by the appellee James Huemmer some eight months later, on July 26, 1976, suspended the potentially foreclosing operation of the 12–year statute of limitations for three years. Although its ultimate foreclosing operation or effect was theoretically suspended, the 12–year limitation period on the guaranty agreement continued to run concurrently with this overlapping three-year period, however, and expired on schedule on November 28, 1987. Since the suit on the guaranty agreement was not filed until February 3, 1988, it was barred by limitations. The circuit court, therefore, properly entered summary judgment in favor of the appellees.

In so holding, we also reject the appellant's remaining contentions. The appellant makes several other arguments as to why this suit should not be barred by limitations. To accommodate each particular argument, the appellant adjusts the time when it claims the statute of limitations began, or will begin, to run. The appellant suggests a number of different, and self-serving, triggers.

■ First, the appellant contends that the circuit court ignored the continuing nature of the guaranty agreement. The guaranty agreement stated that the "guaranty shall continue until written notice from [the appellees] of the discontinuance thereof shall be received by the said Allied Funding, and until any and all indebtedness or liability then outstanding from ABBY INSURANCE CORP. to the Allied Funding . . . covered by this guaranty has been fully paid and discharged." The appellant argues that since neither of these conditions has yet occurred, the appellees' liability under the guaranty agreement continues and, indeed, shall remain vital for at least another twelve years.

We do not think that the words of the agreement support the appellant's argument that the appellees intended the guaranty to continue indefinitely after default in the payment of the indebtedness. Viewing the entire agreement, it is clear that the appellees merely intended to make their guaranty coextensive with the obligation of the principal debtor. We reject this virtually impotent triggering mechanism.

■ The appellant next contends that since the maturity date of the confessed judgment note was April 4, 1978, that is the earliest date on which limitations would begin to run on the guaranty. The appellant ignores the fact that, after Abby Insurance Corporation began to miss installment payments, it exercised its option under an acceleration clause in the security agreement and had judgment by confession entered on that principal obligation, making the unpaid balance of principal and accrued interest immediately payable. It was the appellant itself that invoked the acceleration provision of *Santini v. Fritkin*, 240 Md. 542, 544–545, 214 A.2d 578 (1965), and,

thereby, accelerated the pulling of the trigger that started limitations running.

■ The appellant finally argues that the statute of limitations on the guaranty agreement did not begin to run from the date of the judgment by confession because neither of the appellees received notice of the judgment and, therefore, the judgment has never been entered or enrolled. Such an argument again will not avail the appellant. In proceeding to have judgment by confession entered on the note, the appellant took positive action to collect the unpaid balance of the principal obligation. The appellant cannot now, to prevent the running of limitations, rely on some alleged defect in the judgment process that it instituted.

*JUDGMENT AFFIRMED;*

*COSTS TO BE PAID BY APPELLANT.*