**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

ANCEL LITTLE; CLARA LITTLE; BETTY
ANN LAPPO,
Defendants-Appellants.

No. 95-2827

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Frederic N. Smalkin, District Judge.
(CA-92-2548-S)

Argued: October 28, 1996

Decided: December 23, 1996

Before WILKINSON, Chief Judge, and RUSSELL
and HALL, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** W. Michel Pierson, Baltimore, Maryland, for Appellants.
Janet A. Bradley, Tax Division, UNITED STATES DEPARTMENT
OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Loretta
C. Argrett, Assistant Attorney General, Gary R. Allen, Jonathan S.
Cohen, Lynne Ann Battaglia, United States Attorney, Tax Division,
UNITED STATES DEPARTMENT OF JUSTICE, Washington,
D.C., for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Ancel Little, Clara Little, and Betty Ann Lappo appeal an order of the district court denying their motion for costs and attorney's fees under 26 U.S.C. § 7430. Because the district court did not abuse its discretion in declining to shift fees, we affirm.

I.

Ancel Little was sued three times by the United States for nonpayment of income taxes from 1960 through 1968. The government won all three times, and judgments were entered in district court on these dates and in these amounts:

| | |
|---|---|
| January 28, 1976 | -  $4,163.97 |
| March 31, 1977 | -  $5,325.40 |
| January 13, 1978 | -  $116,761.83 |

The judgments were not immediately satisfied, apparently because the government could not find property on which to execute. In 1980, the government discovered that Little owned real estate in Anne Arundel County, Maryland, though the land was titled in the names of Clara Little and Betty Ann Lappo. The government brought an action to foreclose on this property. A consent judgment was entered on February 5, 1982, in which the property was declared to be subject to the liens of the 1976-1978 judgments, but execution of those judgments would be stayed on condition that Little make annual payments of $50,000 on December 1, 1982 and 1983, and a final lump sum payment on the same date in 1984.

Little defaulted when he failed to make any payment on December 1, 1982. He did pay $10,000 on May 26, 1983, and another $10,000 in September of that year, but he has never paid another cent.

2

The government filed a new suit to foreclose its judgment liens on the property on September 10, 1992.**1** The defendants moved to dismiss. According to Fed. R. Civ. P. 69(a), procedure on execution of judgment follows the local state practice unless a federal statute controls. Under Maryland law, a money judgment expires after twelve years, unless the judgment holder renews his judgment for another twelve years. Md. R. Civ. P. 2-625. The government had not renewed its judgments against Little. Because 14 1/2 years had passed since even the most recent judgment, the defendants argued that execution upon them was barred. The government argued that the 1982 consent judgment was a new judgment into which the 1976-1978 judgments were merged.

The district court disagreed with the government, citing Maryland law that a final order in an action to execute on a judgment does not trigger a new twelve-year period of limitations. Brooks v. Preston, 106 Md. 693, 68 A. 294 (1907). On the other hand, the court noted that because the parties agreed to stay execution of the 1976-1978 judgments if Little paid in specified installments, the period during which the stay was in effect should be deleted from the twelve years. The district court assumed that the stay was in effect from February 5, 1982, through December 1, 1984, when Little was scheduled to pay the final installment. By deleting two years and ten months from the calculation, the district court found the action timely as to the 1978 judgment by two months.

Little answered and then moved for summary judgment. The government so moved as well. With the aid of facts outside the pleadings, Little was able to show the court that the stay did not last as long as the court had supposed. When Little defaulted -- on December 1, 1982 -- the stay ended by its own terms. Even if Little's May and September 1983 part payments are taken into account, the stay could not have lasted long enough (fall 1984) to avoid the limitations bar.

The district court nonetheless found the action timely. A judgment is considered a "specialty" under Maryland law. Md. Cts. & Jud. Proc. Code Ann. § 5-102(a). The very next subsection states:

_____

**1** By this time, Little's tax debt, with accumulated interest, had grown to over a half-million dollars.

> (b) <u>Suspension of time</u>. -- A payment of principal or interest on a specialty suspends the operation of this section [the twelve-year limitations period] as to the specialty for three years after the date of payment.

The district court reasoned that the twelve-year limitations period had stopped running for three years after Little's May 1983 payment, and that therefore the suit was timely. Because Little had no defense on the merits, the court entered summary judgment directing the sale of the property in satisfaction of the 1978 judgment.

The defendants moved to alter or amend the judgment. They cited <u>Allied Funding v. Huemmer</u>, 96 Md.App. 759, 626 A.2d 1055 (1993), in which the court rejected a construction of § 5-102(b) like the district court's:

> In our view, the salutary effect of § 5-102(b) is simply to guarantee at least the same three-year period of limitations following the part payment of principal or interest on a specialty that the law has always provided for the part payment of principal or interest on a simple contract. The statute does not state that the 12-year statute of limitations on a specialty is stopped for three years following such payment and then restarted but only that its operation, or application, is suspended for three years. Therefore, the 12-year statute of limitations on the specialty continues to run concurrently with the grace period. In suspending the operation, or application, of the 12-year limitation period for three years after a part payment, § 5-102(b) has, therefore, significance only during the last three years of the 12-year period. Only during such time would its effect be to extend the limitations period.

96 Md.App. at 769.

The district court denied the motion. Because <u>Huemmer</u> is an intermediate court decision, the court stated that it was not necessarily a controlling interpretation of Maryland law, and the district court's own reading of § 5-102(b) "appears to be more corroborating" than the <u>Huemmer</u> court's.

4

The defendants appealed to this court, which reversed. United States v. Little, 52 F.3d 495 (4th Cir. 1995). We held that, although a district court is not bound by decisions of lower state courts in the same absolute manner that it is bound by the highest state court, in the absence of "persuasive data" that the highest court would decide otherwise, the court should follow the lower court's interpretation. See West v. American Telephone & Telegraph Co., 311 U.S. 223 (1940). We saw no such data, and we therefore held that Huemmer controlled. The government advanced several alternative arguments, which we also rejected.

On remand, after the district court entered summary judgment for the defendants, they moved for an award of over $12,000 in costs and attorney's fees under § 7430 of the Internal Revenue Code. The district court denied the motion, and Little et al. appeal again.

II.

Section 7430 is very similar to the Equal Access to Justice Act[2]-- the government "may" be liable for costs and fees if its "position" was not "substantially justified." The major difference is that the burden of proof is on the defendant-taxpayer. § 7430(c)(4)(A)(i). Review of the district court's decision is for abuse of discretion. Bowles v. United States, 947 F.2d 91, 94 (4th Cir. 1991).

We cannot say that the district court's denial of costs and fees is an abuse of discretion. The key statutory provision,§ 5-102(b), could easily be read as the district court read it. As the district court observed:

> In any event, as precedent too numerous to cite makes clear, the mistakenness of the Government's position is not to be confused with its unreasonableness. In all litigation involving questions of law, there is one right -- and one wrong -- position. If the Government just happens to be wrong, yet still advances, as here, a reasonable argument, the prevailing party is not entitled to fee shifting.

_____

[2] 28 U.S.C. § 2412.

5

We agree. Moreover, we note that § 7430's permissive language ("the prevailing party may be awarded") recognizes that fee-shifting is at bottom an exercise in equity. Little does not dispute that he actually owes the government a great debt, and he can count himself lucky to have avoided paying it. Under such circumstances, especially in the absence of bad faith or harassing conduct by the government, the district court could decline to shift fees. The judgment is affirmed.

AFFIRMED

6