UNITED STATES of America,
Plaintiff–Appellee,

v.

Ancel LITTLE; Clara Little; Betty Ann Lappo, Defendants–Appellants.

No. 94–1891.

United States Court of Appeals,
Fourth Circuit.

Argued Jan. 31, 1995.

Decided April 17, 1995.

**ARGUED:** W. Michel Pierson, Baltimore, MD, for appellants. Jonathan Samuel Cohen, Tax Div., U.S. Dept. of Justice, Washington, DC, for appellee. **ON BRIEF:** Loretta C. Argrett, Asst. Atty. Gen., Lynne Ann Battaglia, U.S. Atty., and Gary R. Allen, Jordan L. Glickstern, Tax Div., U.S. Dept. of Justice, Washington, DC, for appellee.

Before HALL and WILKINSON, Circuit Judges, and CHAPMAN, Senior Circuit Judge.

Reversed and remanded with directions by published opinion. Senior Judge CHAPMAN wrote the opinion, in which Judge HALL and Judge WILKINSON joined.

## OPINION

CHAPMAN, Senior Circuit Judge:

The United States brought this action in the District Court for the District of Maryland against Ancel Little ("Little") to foreclose on certain judgment liens. Little moved for summary judgment, arguing that under Maryland law the statute of limitations had expired, and therefore, the liens were unenforceable. The government also moved for summary judgment. The district court granted the government's motion and denied Little's motion. Little appeals, and we reverse and remand to the district court and direct it to enter summary judgment for the defendant.

I.

In the 1970's, three judgments were entered in the United States District Court in Maryland against appellant Ancel Little for unpaid income taxes. The first judgment was entered January 28, 1976 for $4,163.97, the second was entered March 31, 1977 for $5,325.40 and the third was entered on January 13, 1978 for $116,761.83.

In 1980, presumably because Little had no property in his name, the United States filed a complaint against Little and Betty Rohrback alleging that Little fraudulently purchased certain property in the name of Betty Rohrback. The government alleged that Little, in order to hinder and delay his creditors, gave Rohrback the means to purchase the property. The government requested that the court decree legal title in Little and subject the property, which Rohrback had already transferred to Clara Little and Betty Ann Lappo, to the liens of the judgments that had been entered against Ancel Little.

On February 5, 1982, the parties settled the litigation by entering into a consent judgment declaring the property titled in the names of Clara Little and Betty Ann Lappo subject to the judgment liens. The United States also agreed that if Little would pay $50,000 on December 1, 1982, $50,000 on

December 1, 1983, and the remainder on December 1, 1984, the government would not foreclose on the property subject to the judgment liens.

Little did not make the scheduled payment on December 1, 1982, but he did pay $10,000 on May 26, 1983 and another $10,000 in September 1983. Little made no further payments pursuant to the February 5, 1982 agreement, and the government took no action until it filed this suit on September 10, 1992. Little moved to have the action dismissed, claiming that the statute of limitations had expired on all three judgments.

The district court dismissed the action as to the 1976 and 1977 judgments and found both were barred by the statute. Little and the government both moved for summary judgment on the action brought on the 1978 judgment. The court granted the government's motion and held that the payments made by Little in 1983 tolled the statute of limitations for a sufficient period to allow the action on the 1978 judgment to survive. The appellants' motion to alter or amend the judgment was denied.

## II.

■ This appeal presents three issues: 1) whether the district court erred in interpreting § 5–102(b) of the Maryland Annotated Code, Courts and Judicial Proceedings, 2) whether the 1982 judgment was a new judgment and therefore subject to the Federal Debt Collection Act, and 3) whether this action was in reality an action to collect on the underlying tax liens. We review the district court's grant of summary judgment and denial to alter or amend the judgment *de novo. Lapkoff v. Wilks,* 969 F.2d 78, 81 (4th Cir.1992).

### A. *Section 5–102(b)*

■ Under Rule 69(a) of the Federal Rules of Civil Procedure, the district court, in executing judgments, must follow the law of the state in which it is located. Maryland law provides that a judgment expires twelve years from the date of entry unless it is renewed. Md.R.Civ.P. 2–625; Md.Cts. &

Jud.Proc.Code Ann. § 5–102(a) (1989). The district court found, however, that the twelve years was tolled by the operation of § 5–102(b) of the Maryland Code, Courts and Judicial Proceedings.

Section 5–102(b) states that "[a] payment of principal or interest on a specialty suspends the operation of this section as to the specialty for three years after the date of payment." [1] *Id.* at § 5–102(b). The district court found that the payment made in 1983 tolled the statute for a period of three years; therefore, the statute of limitations did not expire on the 1978 judgment until January 13, 1993, the fifteenth anniversary of its entry, and four months after the government filed the present action. Little claims this application of § 5–102(b) is incorrect and contrary to established state court precedent.

The Maryland Court of Special Appeals interpreted § 5–102(b) in *Allied Funding v. Huemmer,* 96 Md.App. 759, 626 A.2d 1055 (1993), and held:

> the salutary effect of § 5–102(b) is simply to guarantee at least the same three-year period of limitations following the part payment of principal or interest on a specialty that the law has always provided for the part payment of principal or interest on a simple contract. The statute does not state that the 12–year statute of limitations on a specialty is stopped for three years following such payment and then restarted but only that its operation, or application, is suspended for three years. Therefore, the 12–year statute of limitations on the specialty continues to run concurrently with this three-year grace period. In suspending the operation, or application, of the 12–year limitation period for three years after a part payment, § 5–102(b) has, therefore, significance only during the last three years of the 12–year period. Only during such time would its effect be to extend the limitation period. Until the limitations on suing under a specialty have reached the nine-year marker, that special period of grace that is triggered by a part payment and the larger period of grace

---

1. A specialty includes a judgment. Md.Ct. & Jud.Proc.Code Ann. § 5–102(a)(3) (1989).

still available under the statute would run concurrently.

*Id.* at 1060. Under the Maryland court's interpretation of the statute, because the payments made by Little in 1983 were not during the last three years of the running of the statute, the 12 year period of the statute was not extended, and the action by the government would not be timely.

In adjudicating non-federal questions, a federal court must apply the law of the state. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). The simplest way to discern state law is to follow a state statute or a decision by the highest court of the state. When only a state intermediate appellate court has ruled, however, the United States Supreme Court has held:

> [w]here an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.

*West v. American Tel. and Tel. Co.,* 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940); *see also Hicks ex rel Feiock v. Feiock,* 485 U.S. 624, 630 n. 3, 108 S.Ct. 1423, 1428 n.3, 99 L.Ed.2d 721 (1988); *King v. Order of United Commercial Travelers,* 333 U.S. 153, 158, 68 S.Ct. 488, 491, 92 L.Ed. 608 (1948). The general rule is that a federal court must follow the decision of an intermediate state appellate court unless there is "persuasive data" that the highest court would decide differently. *Lynch v. Universal Life Church,* 775 F.2d 576, 580 (4th Cir. 1985) ("Ordinarily, a federal court should follow the decisions of the intermediate state court of appeals.").

The district court found that its reading of § 5–102(b) was "more corroborating than that of the Court of Special Appeals." We know of no rule that allows the district judge to make a "corroborating" finding when there is an opinion of the second highest court in the state directly on point. The judge presented no persuasive data that the highest court in Maryland would decide the

question presented in *Allied Funding* differently, nor does he explain what standard he may have used to find his reading of the statute to be "more corroborating."

We apply *Allied Funding* and hold that because the payments in 1983 and 1984 were not within the last three years of the running of the twelve year statute of limitations, they did not have the effect of extending the time period within which the government could have brought this action, and the action is time barred.

### B. *The Federal Debt Collection Act*

The government argues that the 1982 consent judgment was a new, independent order of the court and is governed by the Federal Debt Collection Act, which was effective May 29, 1991 and was enacted to provide a uniform framework for enforcement of debts owed to the federal government. The statute of limitations for collecting on a lien created by a judgment in a civil action under this new Act is 20 years. 28 U.S.C. § 3201(c) (1992).

The Act does not apply to any judgment entered more than ten years before the statute's effective date, thus the Act does not apply to the 1978 judgment. *Id.* at § 3005. The 1982 judgment satisfies the ten year requirement, but it must be a judgment to which the Act was designed to apply, namely, judgments on a debt. *Id.* at § 3001(a)(1).

The 1982 consent judgment was not a new judgment on a debt. There was no new adjudication of liability. The 1982 judgment cannot exist independently of the 1978 judgment. The consent judgment simply determined additional property to which the previous judgments could attach.

The 1982 consent judgment did not incorporate the earlier judgments. Instead, the judgments continued to be separately enforceable against Little's property after the consent judgment. The purpose of the consent judgment was not to create a lien upon property of the judgment debtor, but instead to provide that the liens arising from the prior judgments could be enforced against property not in Little's name and to provide for installment payments of the judgment.

 

Therefore, the consent judgment was not a new and separate adjudication of liability, and the Federal Debt Collection Act does not apply.

### C. Action for Underlying Tax Liens

The Internal Revenue Code provides for the imposition of a tax lien in favor of the United States upon all property and rights to property belonging to any person who fails to pay any tax for which he is liable. 26 U.S.C. § 6321 (1988). The general lien is effective after assessment has been made against the taxpayer and "after demand" for payment, although the lien relates back to the date of assessment and remains valid until the tax is paid in full or becomes uncollectible due to the running of the statute of limitations. *Id.;* 26 U.S.C. § 6322 (1988).

The government maintained on appeal that the present action was in reality one to foreclose on the judgment liens, and also on the underlying tax liens. Citing *United States v. Overman,* 424 F.2d 1142, 1147 (9th Cir.1970), it argues that a tax lien that attached in 1978 was not barred by limitations, and therefore, the present action was not time-barred.

This action was clearly one to collect on the judgment liens. The original tax liens attached to Ancel Little's property, not to the property of Clara Little and Betty Ann Lappo. The consent judgment allowed the property titled to Clara and Betty Ann to be subject to the judgment liens, not the tax liens. Without either a consent judgment allowing this property to be subject to the tax liens, or an adjudication of the question of title, the government has no right to enforce the tax lien by selling this property. It may still enforce the tax liens against any property Ancel Little owns that may be subject to said liens.

For the foregoing reasons, the district court's grant of the government's motion for summary judgment is reversed and the case is remanded to the district court with direction to enter summary judgment in favor of defendants.

*REVERSED AND REMANDED WITH DIRECTIONS.*