**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 17-1075**

DEBORAH MEEK HICKERSON,

> Plaintiff – Appellant,

> v.

YAMAHA MOTOR CORPORATION, U.S.A.; YAMAHA MOTOR CO LTD.,

> Defendants – Appellees.

Appeal from the United States District Court for the District of South Carolina, at Anderson.  J. Michelle Childs, District Judge.  (8:13-cv-02311-JMC)

Argued:  December 6, 2017                    Decided:  February 20, 2018

Before MOTZ, AGEE, and FLOYD, Circuit Judges.

Affirmed by published opinion.  Judge Agee wrote the opinion, in which Judge Motz and Judge Floyd joined.

**ARGUED:** David G. Owen, DAVID G. OWEN, P.A., Aiken, South Carolina; Austin Fletcher Watts, DOUGLAS F. PATRICK, PA, Greenville, South Carolina, for Appellant. Richard Alan Mueller, THOMPSON COBURN LLP, St. Louis, Missouri, for Appellees. **ON BRIEF:** Douglas F. Patrick, COVINGTON PATRICK HAGINS STERN & LEWIS, P.A, Greenville, South Carolina, for Appellant. Heather F. Counts, THOMPSON COBURN LLP, St. Louis, Missouri; Robert H. Hood, Jr., HOOD LAW FIRM, LLC, Charleston, South Carolina, for Appellees.

AGEE, Circuit Judge:

Deborah Meek Hickerson sustained serious internal injuries in a personal watercraft ("PWC") accident and filed a complaint in the District of South Carolina against the manufacturers of the PWC, Yamaha Motor Corporation, U.S.A. and Yamaha Motor Co., Ltd. (collectively "Yamaha"). In her complaint, Hickerson alleged product liability claims under South Carolina law for design and warning defects. The district court excluded Hickerson's proffered expert testimony and entered summary judgment in favor of Yamaha on all claims. Hickerson then filed a motion to reconsider under Federal Rule of Civil Procedure 59(e), which the district court also denied. On appeal, Hickerson contends the district court erred in requiring expert testimony on her claims and in failing to conduct an appropriate *Daubert* analysis before excluding her expert's testimony. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). For the reasons below, we affirm the judgment of the district court.

I.

A.

This appeal follows a motion for summary judgment. Accordingly, we view the facts in the light most favorable to Hickerson, the nonmoving party below. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The PWC at issue, a 2011 Yamaha VXS WaveRunner, has on-craft warnings, which are repeated in the operator's manual, that advise riders to wear protective clothing

2

to avoid internal injuries. The following warning (reproduced below) appears on the PWC's front glove box:

> WEAR PROTECTIVE CLOTHING. Severe internal injuries can occur if water is forced into body cavities as a result of falling into water or being near jet thrust nozzle. Normal swimwear does not adequately protect against forceful water entry into rectum or vagina. All riders must wear a wet suit bottom or clothing that provides equivalent protection (See Owner's Manual).



J.A. 716. The PWC's rear boarding platform also bears a warning label (reproduced below) stating that "[s]evere internal injuries can occur" and passengers must "[w]ear a wetsuit bottom or clothing that provides equivalent protection."



J.A. 716.

The PWC and accompanying owner's manual also contained warnings that only three people may ride the craft at a time, the operator should be at least sixteen years old, and a person should not ride after consuming alcohol.

In 2012, Hickerson was a passenger riding the PWC on Lake Hartwell, South Carolina. She fell off the back of the PWC into the jet thrust behind it and suffered injuries to her rectum, perineum, vagina, anus, and colon ("orifice injuries"). She underwent eight weeks of medical procedures and recovery.

When she was injured, Hickerson was wearing a bikini and no wetsuit. It is undisputed that she was the fourth passenger on the PWC, a ten-year-old was driving, and Hickerson had consumed alcohol prior to riding. Hickerson admitted that she did not read any on-craft or manual warnings before riding the PWC.

B.

Hickerson, a South Carolina resident, filed her complaint in federal court based on diversity of citizenship with Yamaha. *See* 28 U.S.C. § 1332. In her complaint, Hickerson pleaded state law claims of strict liability, negligence, and breach of warranties based on the PWC's allegedly inadequate warnings and defective design.

During discovery, Hickerson proffered the expert testimony of Dr. Anand Kasbekar, a mechanical engineer familiar with PWCs who has been retained as an expert in dozens of various product liability cases. Dr. Kasbekar represented that he intended to give several opinions: that the PWC's warnings were inadequate, that a set of alternative warnings was better, and that design alterations like a contoured seat and hand straps

4

would have made the PWC safer. The district court found Dr. Kasbekar qualified to testify as an expert on PWC warnings and design based on his relevant experience in engineering, forensic analysis, and warnings testimony.

However, in response to a motion in limine by Yamaha, the district court excluded Dr. Kasbekar's proffered opinion for a set of alternative warnings as unreliable under *Daubert*. *Hickerson v. Yamaha Motor Corp., U.S.A.*, No. 8:13-cv-02311-JMC, 2016 WL 4123865 (D.S.C. July 29, 2016). The district court explained that because Dr. Kasbekar's proposals were neither tested nor based on "specific relevant research or studies," they bore no indicia of reliability. *Id.* at *5; *see Daubert*, 509 U.S. at 597. In its written opinion on the motion in limine excluding the alternative warning opinion, the district court mentioned Dr. Kasbekar's separate inadequate warning opinion. However, the court did not expressly exclude the inadequate warning opinion.

Later, in awarding summary judgment to Yamaha, the district court revisited the issue of whether Dr. Kasbekar's proposed inadequate warning opinion was admissible. *Hickerson v. Yamaha Motor Corp., U.S.A.*, No. 8:13-cv-02311-JMC, 2016 WL 4367141 (D.S.C. Aug. 16, 2016). The court noted that Hickerson's claim of a warning inadequacy "implicate[s] the study of human factors and other industry standards . . . generally beyond the common knowledge of a jury." *Id.* at *3. Thus, the district court expected expert testimony to support any claim of inadequate warnings. But Dr. Kasbekar's inadequate warning opinion was not supported by studies, research, or other scientific basis of verification necessary to establish reliability for *Daubert* purposes. Indeed, because "[t]he primary evidence [Hickerson] presented . . . to support her inadequate

5

warnings claims was, in fact, in the form of expert testimony from Dr. Anand Kasbekar" and the proposed warning system opinion was excluded as unreliable, the district court was "hard-pressed to discern a 'genuine dispute as to any material fact'" on Hickerson's warnings claims. *Id.* at \*3–4. The district court then excluded the proffered inadequate warning opinion and awarded summary judgment to Yamaha on all the warnings claims.

On the defective design claim, the court held that South Carolina continues to follow Comment j to § 402A of the Restatement (Second) of Torts, which, in the district court's view, allows adequate product warnings to "cure" alleged design defects. The court next observed that because Hickerson had not produced admissible evidence that the PWC's warnings were inadequate, "the product's warnings [were] adequate as a matter of law." *Id.* at \*6. Consequently, under Comment j, the adequate warnings cured any alleged design defects so that the PWC could not be deemed defectively designed. Because strict liability, negligence, and breach of warranties claims require "proof of a defective condition," the court granted judgment as a matter of law on all of Hickerson's claims. *Id.*

Hickerson filed a motion to reconsider under Rule 59(e), claiming the district court's rulings were clearly erroneous because Hickerson had provided sufficient evidence to withstand summary judgment and a product with adequate warnings can still be unreasonably dangerous under South Carolina law. *See Hickerson v. Yamaha Motor Corp., U.S.A.*, No. 8:13-cv-02311-JMC, 2016 WL 7324684 (D.S.C. Dec. 16, 2016). The district court rejected Hickerson's argument that Dr. Kasbekar's inadequate warning opinion could rest on his own "specialized skill, training, and experiences" without any

6

relevant scientific support. *Id.* at \*7. It also rejected Hickerson's "mere disagreement with the court's interpretation of South Carolina law" on the application of Comment j. *Id.* at \*12. Having reviewed its rulings, the district court denied the motion.

Hickerson timely appealed, and we have jurisdiction pursuant to 28 U.S.C. § 1291. Federal courts sitting in diversity apply the substantive state law that would apply had the plaintiff filed the case in state court. *Stonehocker v. Gen. Motors Corp.*, 587 F.2d 151, 154 (4th Cir. 1978). The Parties agree that South Carolina products liability law applies to the issues in this case.

II.

On appeal, Hickerson challenges the district court's exclusion of Dr. Kasbekar's opinions, its grant of summary judgment, and its denial of her motion for reconsideration.

We review the exclusion of expert testimony for abuse of discretion. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 143 (1997). Trial judges serve a "gatekeeping" function and have "considerable leeway" in excluding evidence. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). Expert testimony must be "based on sufficient facts or data," and the expert must arrive at his opinions by properly applying "reliable principles and methods" to the facts. *See* Fed. R. Evid. 702.

Because Hickerson appeals the district court's exclusion of Dr. Kasbekar's testimony as unreliable, we consider the following *Daubert* factors pertaining to the reliability of evidence:

(1) whether a theory or technique can be or has been tested; (2) whether it

7

has been subjected to peer review and publication; (3) whether a technique has a high known or potential rate of error and whether there are standards controlling its operation; and (4) whether the theory or technique enjoys general acceptance within a relevant scientific community.

*Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001) (citing *Daubert*, 509 U.S. at 592–94). The Rule 702 inquiry is "a flexible one," and the *Daubert* factors are "helpful, not definitive." *Kumho*, 526 U.S. at 150–51; *see Daubert*, 509 U.S. at 493. When applying these standards, courts "should be conscious of two guiding, and sometimes competing, principles[:] Rule 702 was intended to liberalize the introduction of relevant expert evidence [and] expert witnesses have the potential to be both powerful and quite misleading." *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999).

We review the district court's entry of summary judgment de novo. *Higgins v. E.I. DuPont de Nemours & Co.*, 863 F.2d 1162, 1167 (4th Cir. 1988). Summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). We review the denial of a motion to reconsider for abuse of discretion. *Ingle ex rel. Estate of Ingle v. Yelton*, 439 F.3d 191, 197 (4th Cir. 2006).

III.

We turn first to Hickerson's warnings claims for which she sought to introduce expert opinion testimony as to the inadequacy of the PWC's existing warnings and that alternative warnings should have been used. Hickerson offered Dr. Kasbekar as her

expert, and he proffered to opine that the existing warnings were inadequate in location, content, and form. These deficiencies, according to Dr. Kasbekar, inhibited passengers' ability to see the warnings and appreciate the danger of riding a PWC without a wetsuit. He also intended to offer a proposed set of alternative PWC warnings that he claimed would have better informed passengers of the PWC's danger. The district court excluded the alternative warning opinion as unreliable and later similarly excluded his inadequate warning opinion, which was "ostensibly . . . ground[ed]" on the alternative warning opinion. 2016 WL 4367141, at *3.

A.

Hickerson contends the district court abused its discretion by failing to conduct a proper *Daubert* analysis before excluding Dr. Kasbekar's inadequate warning opinion. She argues the court mistakenly held that the proposed inadequate warning opinion was based only on the excluded alternative warning opinion when, in fact, Dr. Kasbekar had formulated his inadequate warning opinion by drawing on his experience, training, testing, and knowledge of PWC industry standards. Yamaha responds that the district court appropriately excluded the inadequate warning opinion because it was unsupported with any scientific indicia of reliability. To that point, Yamaha noted that Dr. Kasbekar's claim for the inadequacy of the glove box and rear craft warnings hinged chiefly on their location; however, his only support for that proposition was his already excluded alternative warning opinion. The district court did not abuse its discretion when it excluded Dr. Kasbekar's inadequate warning opinion.

9

Dr. Kasbekar had concluded in his expert report that the existing warnings on the PWC were inadequate because passengers could more easily see a warning located directly on the seat instead of warnings appearing on the glove box and at the rear of the craft. He also concluded that the warnings were "congested" and confused important information that passengers should read before riding the PWC. J.A. 161. Yet, aside from his alternative warning opinion—the exclusion of which Hickerson does not challenge on appeal—Dr. Kasbekar supported his inadequate warning opinion with no research, data, or scientific theories. The district court observed,

> outside of the warnings expert testimony, there is little to no evidence in the record on which this court can rely to conclude that there is a genuine factual dispute as to whether the product was 'unreasonably dangerous' based on Defendants' failure to provide an adequate warning concerning the product's use.

2016 WL 4367141, at *4. Dr. Kasbekar had not tested his inadequate warning opinion and admitted he provided no research to support the notion that passengers read a seat warning more often than glove box or rear craft warnings, especially if "read means . . . read and comprehend it." J.A. 163–64. Even his opinion that the wetsuit depicted in the on-craft warnings should be black rather than white was based solely on his personal recollection that he had never seen a white wet suit. He could not reliably opine that the PWC warnings with white wetsuit images are inadequate because he failed to provide relevant testing or research and his alternative warning opinion featuring a black wetsuit—which could support the inadequacy of the existing warnings—had been excluded. Dr. Kasbekar's own testimony established that his opinions lacked the markers

10

of reliability Rule 702 and *Daubert* require to prevent an expert from misleading a jury with unproven conjecture.

Furthermore, the district court concluded Hickerson presented "little to no evidence beyond Dr. Kasbekar's excluded testimony" to support her claim that the PWC's warnings were defective. 2016 WL 7324684, at *4. She was unable to refute Yamaha's evidence that the Boating Safety Advisory Council and Coast Guard had approved the PWC's warnings and uniform labels. As illustrated above, the warnings on the PWC plainly warn of the danger of the orifice injuries Hickerson sustained. The district court noted that, in the absence of any evidence to the contrary, "it would be difficult . . . to accept that a jury could find that the warnings' direct and specific verbiage and its multiple locations on both the front and rear parts of the PWC rendered them inadequate." 2016 WL 4367141, at *4. The district court properly concluded that the PWC's warnings were adequate as a matter of law.

## B.

Hickerson also contends the district court erred in requiring expert testimony at all to support her warnings claims. Because South Carolina only requires expert testimony when issues are beyond a jury's general knowledge and most jurors will have had exposure to various warnings, Hickerson posits the jury here did not need expert testimony to determine whether the PWC's warnings were adequate. Yamaha responds that the district court did not err because the issue of the adequacy of the warnings could only be submitted to the jury once admissible evidence had been presented that they were inadequate.

11

While the district court noted expert testimony was "in this particular case . . . important" and was "perhaps the most appropriate form of evidence to support" the inadequacy of the PWC's warnings, the district court did not end its analysis there. 2016 WL 7324684, at *9. After it excluded Dr. Kasbekar's proffered opinions as unreliable, the court also looked for other warnings evidence in the record but was "hard-pressed to discern a genuine factual dispute on the issue precisely because [his] opinion testimony was the primary evidence Plaintiff presented on the issue and because there is little to no evidence in the record on the issue beyond his testimony." *Id.* (internal citations omitted). The district court did not exclude Hickerson's warnings claims merely because they lacked expert testimony; rather, it required her to support those claims with *any* admissible evidence. In this regard, Hickerson simply failed.

## C.

Hickerson relied to her detriment on Dr. Kasbekar's expert testimony as the exclusive support for her warnings claims. Because "the question of the adequacy of the warning" does not reach the jury unless "evidence has been presented that the warning was inadequate," and Hickerson failed to present such evidence, her warnings claims could not withstand summary judgment. *Allen v. Long Mfg. NC, Inc.*, 505 S.E.2d 354, 357 (S.C. Ct. App. 1998). The district court did not err in awarding summary judgment to Yamaha on the defective warnings claims.

IV.

We turn next to Hickerson's defective design claims. The Parties' core disagreement concerns whether claims of defective design are defeated when product warnings are deemed legally adequate, as occurred in this case. Our judicial function in a diversity case such as this is cabined by a bedrock principle of federalism: "In adjudicating non-federal questions, a federal court must apply the law of the state." *United States v. Little*, 52 F.3d 495, 498 (4th Cir. 1995). Thus, we will apply South Carolina law to resolve this inquiry.

South Carolina's Defective Products Act ("the Act") imposes strict liability on manufacturers of defectively designed products. S.C. Code § 15-73-10, *et seq.* This Act codified § 402A of the Restatement (Second) of Torts, whose comments the South Carolina General Assembly also adopted as the expression of its legislative intent for the Act. S.C. Code § 15-73-30 ("Comments to § 402A of the Restatement of Torts, Second, are incorporated herein by reference thereto as the legislative intent of this chapter."); *Aldana v. RJ Reynolds Tobacco Co.*, No. 2:06-3366-CWH, 2008 WL 1883404, at *1 (D.S.C. Apr. 25, 2008). The disputed provision, Comment j to § 402A, states in pertinent part: "Where warning is given, the seller may reasonably assume that it will be read and heeded; and a product bearing such a warning, which is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous." Restatement (Second) of Torts § 402A cmt. j (Am. Law Inst. 1965).

Advancing a number of policy arguments, Hickerson contends Comment j allows her to bring defective design claims even if her defective warnings claims fail.

13

Specifically, she argues that design claims are independent of any warning claim. As a consequence, Hickerson represents that allowing good warnings to trump bad design would "subordinat[e] design safety to warnings." Appellant's Br. 14. Her counsel also speculates that William Prosser, the drafter of the Restatement (Second) of Torts, simply erred in drafting Comment j and did not intend for it to say what it says. In response, Yamaha notes that Comment j's plain text, and the South Carolina court decisions applying it, allow a product manufacturer to rely on a legally adequate warning to avoid liability for an alleged defective design.

Hickerson calls Comment j "ambiguous" in passing but offers no textual support for her position. Appellant's Br. 6. Even a cursory examination of Comment j refutes her label. On its face, Comment j provides that an adequate *warning* makes a product "safe for use if [the warning] is followed." § 402A cmt. j. A product seller who puts such a *warning* on his product is entitled to "reasonably assume that [the warning] will be read and heeded." *Id.* The *warning* also makes the product "not in defective condition, nor . . . unreasonably dangerous." *Id.* The application of Comment j to design defect claims thus relies entirely upon the adequacy of a product warning.

Consistent with Comment j's text, the South Carolina Court of Appeals has repeatedly applied its plain language to confirm that an adequate warning operates to "cure" a product's alleged design defects. *E.g.*, *Curcio v. Caterpillar, Inc.*, 543 S.E.2d 264, 269 (S.C. Ct. App. 2001) ("[A] product is not unreasonably dangerous if accompanied by adequate warnings that, if followed, make the product safe for use."), *rev'd on other grounds*, 585 S.E.2d 272 (S.C. 2003); *Allen*, 505 S.E.2d at 359 (stating a

14

manufacturer need not "refine a product which is made safe for use by an adequate warning so that the product does not need a warning to be safe"); *Anderson v. Green Bull, Inc.*, 471 S.E.2d 708, 710 (S.C. Ct. App. 1996) ("A product bearing a warning that the product is safe for use if the user follows the warning is neither defective nor unreasonably dangerous; therefore, the seller is not liable for any injuries caused by the use of the product if the user ignores the warning."); *Claytor v. Gen. Motors Corp.*, 286 S.E.2d 129, 132 (S.C. Ct. App. 1982) ("If [inherently dangerous products] are properly prepared, manufactured, packaged and accompanied with adequate warnings and instructions, they cannot be said to be defective.").

This Court has likewise understood Comment j to shield a manufacturer from liability for product defects if the product contains an adequate warning. *See Phelan v. Synthes (U.S.A.)*, 35 F. App'x 102, 109–10 (4th Cir. 2002) (per curiam) (citing *Allen* and *Anderson* for the principle that a product with an adequate warning is not defective or unreasonably dangerous). The South Carolina district courts have ruled similarly. *Priester v. Futuramic Tool & Eng'g Co.*, No. 2:14-cv-01108-DCN, 2017 WL 1135134, at *6 (D.S.C. Mar. 27, 2017); *Alford v. Lowe's Home Ctrs., Inc.*, No. 8:13-1787-BHH, 2014 WL 5305825, at *2 (D.S.C. Oct. 15, 2014) (recognizing the principle as articulated in *Anderson* and *Claytor*); *Aldana*, 2008 WL 1883404, at *1 (rejecting the plaintiff's theory "that an adequate warning does not preclude liability for a defective design claim"). *But see Marshall v. Lowe's Home Ctrs., LLC*, No. 4:14-cv-04585-RBH, 2016 WL 4208090, at *20 & n.29 (D.S.C. Aug. 10, 2016) ("Comment j and the South Carolina cases

15

interpreting it simply recognize an adequate warning *may* preclude liability for a defective design claim.").

Although the Supreme Court of South Carolina has not applied Comment j to the precise issue before us, the South Carolina Court of Appeals has consistently applied Comment j in similar South Carolina products liability cases. When the highest court of a state has not indicated how it would decide an issue, we follow the law of intermediate state courts, like the South Carolina Court of Appeals, absent "persuasive data" that the highest court would rule differently. *Little*, 52 F.3d at 498.

Under South Carolina law, a product manufacturer is entitled to assume that its warnings will be read and heeded. § 402A cmt. j. Hickerson admitted she did not read the PWC's warnings, and even if she had, she produced no admissible evidence that they were legally inadequate. *See Allen*, 505 S.E.2d at 357 (allowing issue of warning adequacy to go to the jury only if accompanied by admissible evidence of inadequacy). Thus, the PWC's warnings were adequate as a matter of law. Consequently, even if we assume, without deciding, that the PWC was defectively designed, Comment j allows Yamaha to avoid liability for any design defects because the PWC's warnings were legally adequate such that, "if [they were] followed, [the PWC was] not in defective condition, nor [was] it unreasonably dangerous" when Hickerson was injured. *See* § 402A cmt. j.

Nevertheless, Hickerson urges us to rewrite the text of Comment j despite its lack of facial ambiguity. She would have us ignore the uniform decisions of the South Carolina Court of Appeals based on her counsel's academic theories and policy

16

arguments. She has presented no "persuasive data" that the Supreme Court of South Carolina would apply Comment j differently, yet she essentially asks us to do what that court has not done—overrule the South Carolina Court of Appeals on a question of South Carolina law. This we cannot do. Federal courts "should not create or expand [a] [s]tate's public policy." *St. Paul Fire & Marine Ins. Co. v. Jacobson*, 48 F.3d 778, 783 (4th Cir. 1995). Comment j means what it says and functions to cure the PWC's alleged design defects. Accordingly, the district court did not err in granting summary judgment on Hickerson's design defect claims.[*]

V.

Hickerson based her claims of strict liability, negligence, and breach of warranties on theories of warning and design defects. Because the record is devoid of admissible evidence on either theory of defect, the district court properly entered summary judgment for Yamaha on all claims, and its judgment is

*AFFIRMED*.

---

[*] Though the district court's ruling on Yamaha's motion in limine underpinned the court's summary judgment ruling, Hickerson does not appeal the disposition of the motion in limine. And because the district court correctly disposed of the motion for summary judgment, it similarly did not abuse its discretion in denying Hickerson's motion for reconsideration.