**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 25-1409**

_____

ENVIRONMENTAL HYDROGEOLOGICAL CONSULTANTS, INC.,

Plaintiff – Appellant,

v.

NORTH AMERICAN RISK SERVICES, INC.; RANDY SCROGGS,

Defendants – Appellees.

_____

Appeal from the United States District Court for the Eastern District of North Carolina, at Wilmington.  Louise W. Flanagan, District Judge.  (7:24-cv-00458-FL)

_____

Argued:  December 9, 2025                          Decided:  March 10, 2026

_____

Before BENJAMIN and BERNER, Circuit Judges, and John A. GIBNEY, Jr., Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

_____

Affirmed by unpublished opinion.  Judge Gibney wrote the opinion, in which Judge Benjamin and Judge Berner joined.

_____

**ARGUED:**  Law Lamar Armstrong, III, THE ARMSTRONG LAW FIRM, PA, Smithfield, North Carolina, for Appellant.  Steven Andrew Bader, CRANFILL SUMNER LLP, Raleigh, North Carolina, for Appellees.  **ON BRIEF:**  Christopher S. Edwards, WARD AND SMITH, P.A., Wilmington, North Carolina, for Appellant.  Jennifer Welch, CRANFILL SUMNER LLP, Raleigh, North Carolina, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit.

GIBNEY, Senior District Judge:

On June 1, 2022, a hog waste leak began at a methane gas facility operated by Legacy Biogas, LLC ("Legacy"). The leak threatened a nearby watershed. Legacy promptly contacted the plaintiff-appellant, Environmental Hydrogeological Consultants, Inc. ("EHC"), to conduct environmental remediation. Anticipating a costly cleanup, Legacy also notified its environmental impairment insurer, Admiral Insurance ("Admiral"), of the leak. Admiral assigned the claim to its third-party administrator, defendant-appellee North American Risk Services, Inc. ("NARS"). In turn, NARS assigned the claim to its employee, defendant-appellee Randy Scroggs ("Scroggs").

That same day, Scroggs told Legacy that Admiral would pay the cleanup costs. Legacy advised EHC of this, and the consultants began pumping hog waste out of Legacy's facility and a nearby creek. But Admiral never paid Legacy's claim. EHC later sued both NARS and Scroggs in North Carolina state court, alleging one count of negligent misrepresentation regarding Scroggs's assurances about Admiral's payment.

The appellees removed the suit to the Eastern District of North Carolina and filed a motion to dismiss for failure to state a claim. The district court granted the motion on the grounds that the defendants owed no duty of care to the plaintiff under North Carolina law. EHC appeals the district court's grant of the motion to dismiss and contends that the court incorrectly applied North Carolina law on the duty owed by an independent adjuster to a claimant. Because the district court properly applied North Carolina law to the sole claim, it correctly granted the motion to dismiss. We, therefore, affirm.

2

I.

A.

Legacy operates a methane gas facility that uses anaerobic digestion in Fremont, North Carolina. Parties' Joint Appendix (J.A.) 6, 8.[1] At the time of the hog waste spill, Admiral insured Legacy on an "Environmental Impairment Liability Policy." *Id.* at 7. This policy provided coverage for cleanup costs and third-party liability claims arising out of pollution events. *Id.*

On June 1, 2022, Todd Ballance, a "managing member" of Legacy, contacted the state Division of Water Quality about a manure leak at Legacy's facility. *Id.* at 9. Because a watershed flows near the property, the state agency referred Mr. Ballance to the plaintiff for remediation. *Id.* Mr. Ballance requested such assistance from EHC but asked that the consultants refrain from working until he received Admiral's approval for their services. *Id.*; Appellant's Br. 3–4.

Meanwhile, Deborah Ballance, a "member" of Legacy, submitted an incident report about the leak to Admiral.[2] NARS received the claim as Legacy's independent adjuster and directed its employee, Scroggs, to contact the insured. J.A. 9. After a missed phone call and an e-mail, both from Scroggs, Mrs. Ballance called the adjuster. *Id.* at 10. During

---

[1] Anaerobic digestion generates biogas by breaking down organic matter, like manure, in an enclosed environment. *Id.* at 8.

[2] J.A. 9. Specifically, Mrs. Ballance "submitted an incident report to Berkley Custom Insurance Managers," which manages claims for the underwriter of Legacy's policy. *Id.* The parties treat this report to Berkley as though Legacy notified Admiral directly, and the Court does the same. *See, e.g.*, Appellees' Br. 2; Appellant's Br. 3.

3

their call, Scroggs advised Mrs. Ballance that Admiral would pay cleanup costs. *Id.* Sometime after this conversation, Mr. Ballance informed EHC that Admiral had approved the consultants' services. *Id.* Legacy then retained EHC for environmental remediation. *Id.*

EHC thus began its messy work in Fremont. *Id.* at 11; Appellant's Br. 4. On June 6, 2022, Mr. Ballance updated Scroggs on EHC's efforts, and the parties discussed costs. J.A. 11. The next day, on June 7, EHC called Scroggs directly to ask about payment for their services. *Id.*; Appellant's Br. 4. Scroggs indicated he would follow up with EHC once he heard back from Admiral, and he reiterated this position in a letter to the consultants that day. J.A. 11–12; Appellant's Br. 4–5.

On June 8, 2022, Scroggs sent a letter to Mrs. Ballance that stated Admiral would pay cleanup expenses exceeding the policy's "Self-Insured Retention," analogous to a deductible. J.A. 12. EHC submitted invoices for some of its work to Legacy on June 14, 2022, and to Scroggs on June 15, 2022. *Id.*; Appellant's Br. 5. Hearing nothing from the adjuster, EHC followed up on June 20, 2022. J.A. 12; Appellant's Br. 5. Scroggs advised that EHC's invoice remained under examination. J.A. 13; Appellant's Br. 5. EHC sent Legacy a second invoice on June 27, 2022, and again contacted Scroggs about payment. J.A. 13; Appellant's Br. 5. Citing Admiral's ongoing coverage review and Legacy's hiring of EHC, Scroggs instructed the cleanup crew to request payment from Legacy directly. *Id.*

4

EHC continued seeking payment from Admiral and Legacy to no avail. *Id.* Admiral never denied Legacy's claim, but the insurer never paid it, either.[3]

## B.

EHC sued NARS and Scroggs in North Carolina state court for one count of negligent misrepresentation based on Scroggs's assertion, to Mrs. Ballance, that Admiral would pay cleanup costs. J.A. 14–15; Appellant's Br. 6. After removing[4] the case to federal court, the defendants moved to dismiss the complaint for failure to state a claim. J.A. 16; Appellant's Br. 6. The district court applied North Carolina law and held that the defendants, "as independent adjusters," owed no duty of care to EHC. Accordingly, the district court dismissed the one-count complaint in full. J.A. 26–27; *Env'tal Hydrogeological Consultants v. N. Am. Risk Servs., Inc. and Randy Scroggs*, No. 7:24-cv-458, 2025 WL 836586, at *5 (E.D.N.C. Mar. 17, 2025).

## II.

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a complaint for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). This Court reviews de novo a district court's dismissal on these grounds. *Misjuns v. City of Lynchburg*, 139 F.4th 378, 384 (4th Cir. 2025). In so doing, we must view the complaint

---

[3] J.A. 13; Appellant's Br. 5–6. In February 2024, Admiral sued Legacy for a declaratory judgment of non-coverage. J.A. 13–14, 22. EHC was also party to this separate suit. *Id.* at 22. The court entered default against Legacy on July 18, 2024. *Id.*

[4] J.A. 1–3; *see* 28 U.S.C. §§ 1441, 1446. The lower court had diversity jurisdiction over the suit based on EHC's North Carolina citizenship, the defendants' Delaware and Florida citizenship, and the amount in controversy. *See* J.A. 2; 28 U.S.C. § 1332.

5

"in the light most favorable to the plaintiff," and, accordingly, "accept[] as true all well-pleaded allegations." *Id.* (citing *Franks v. Ross*, 313 F.3d 184, 192 (4th Cir. 2002), and Fed. R. Civ. P. 8(a)(2)). The Court need not, however, accept proffered legal conclusions drawn from the facts, nor "unwarranted inferences, unreasonable conclusions, or arguments." *Misjuns*, 139 F.4th at 384 (citing *Schatz v. Rosenberg*, 943 F.2d 485, 489 (4th Cir. 1991), and *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000)).

## A.

"As every first-year law student learns, the *Erie* doctrine provides that a federal court sitting in diversity applies federal procedural rules and state substantive rules." *Moreno v. Bosholm*, 151 F.4th 543, 559–60 (4th Cir. 2025) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). The Court, therefore, must apply North Carolina substantive law to evaluate whether EHC's complaint adequately states a claim for relief on the sole count of negligent misrepresentation.

But determining state law's content can prove more challenging than 1L Civil Procedure suggests. Of course, "the simplest way to discern state law is to follow a state statute or a decision by the highest court of the state." *United States v. Little*, 52 F.3d 495, 498 (4th Cir. 1995). Provisions in a state's code or decisions from its highest court, however, cannot answer every legally significant question. Lower state courts must fill the remaining gaps in the legal canon. Accordingly, "when only a state intermediate appellate court has ruled" on a matter, that decision is "datum" for ascertaining state law. *Id.* (citing *West v. Am. Tel. and Tel. Co.*, 311 U.S. 223, 237 (1940)). Indeed, a federal court *must*

follow the decision of an intermediate state appellate court "unless there is 'persuasive data' that the highest court would decide differently." *Little*, 52 F.3d at 498 (emphasis added) (citing *Lynch v. Universal Life Church*, 775 F.2d 576, 580 (4th Cir. 1985) ("Ordinarily, a federal court should follow the decisions of the intermediate state court of appeals.")).

Under North Carolina law, "[t]he tort of negligent misrepresentation occurs when a party justifiably relies to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care." *Dallaire v. Bank of Am., N.A.*, 760 S.E.2d 263, 267 (N.C. 2014) (quoting *Raritan River Steel Co. v. Cherry, Bekaert & Holland*, 367 S.E.2d 609, 612 (N.C. 1988)). Negligent misrepresentation, then, resembles ordinary negligence, with the "key distinction" that negligent misrepresentation requires "proof not merely of a breach of duty, but also the additional requirement that the claimant *justifiably relied* to his detriment on the information." *Value Health Sols., Inc. v. Pharm. Rsch. Assocs., Inc.*, 891 S.E.2d 100, 113 (N.C. 2023) (emphasis in original). Importantly, "[a] party cannot establish justified reliance on an alleged misrepresentation if the party fails to make reasonable inquiry regarding the alleged statement." *Dallaire*, 760 S.E.2d at 267 (citing *Pinney v. State Farm Mut. Ins. Co.*, 552 S.E.2d 186, 192 (N.C. Ct. App. 2001), *disc. rev. denied*, 572 S.E.2d 788 (N.C. 2002)). But beyond this difference, the torts are identical: both causes of action require a duty owed by the defendant to the plaintiff, the defendant's breach of which harmed the plaintiff. *Compare Dallaire*, 760 S.E.2d at 267 (reciting the elements of negligent misrepresentation), *with Keith v. Health-Pro Home Care*

7

*Servs., Inc.*, 873 S.E.2d 567, 574 (N.C. 2022) (identifying the elements of ordinary negligence).

The North Carolina Supreme Court has not examined whether a duty of care exists between an independent insurance adjuster and a claimant who is not an insured under the applicable insurance policy. The North Carolina Court of Appeals, however, considered this exact issue in *Koch v. Bell, Lewis & Assocs.*, 627 S.E.2d 636 (N.C. Ct. App. 2006). *Koch*, therefore, offers the "datum" of a state intermediate court ruling in the absence of guidance from the highest court. *See Little*, 52 F.3d at 498.

Faced with a question of first impression, the *Koch* court rigorously analyzed cases from other states that addressed an independent adjuster's duty (if any) to a claimant against an underlying insurance policy in a negligence action. 627 S.E.2d at 638–39. The Court of Appeals determined that "a majority of jurisdictions have held that a negligence claim cannot be brought against an independent insurance adjuster by a claimant," whether that claimant be a third party or the insured, and cited cases from both within and beyond this Court's territory in support. *See, e.g.*, *Charleston Dry Cleaners & Laundry v. Zurich Am. Ins. Co.*, 586 S.E.2d 586 (S.C. 2003); *Meineke v. GAB Business Servs.*, 991 P.2d 267 (Ariz. Ct. App. 1999). Further, the court noted that even the minority of jurisdictions that have concluded an independent adjuster may be held liable for negligence "have held that the independent adjuster owes the duty to *the insured*." *Koch*, 627 S.E.2d at 638 (emphasis in original). Accordingly, the Court of Appeals adopted the majority approach while explicitly embracing "the same logic that compelled the . . . California Court of Appeals to hold that there was no duty of an adjuster to the insured:"

8

> Imposing a duty [ ] would subject the adjuster to conflicting loyalties. Insurers and insureds often disagree as to coverage or the amount of loss. An adjuster cannot argue both sides of such disputes, any more than a lawyer can represent opposite sides in a lawsuit. An adjuster owes a duty to the insurer who engaged him. A new duty to the insured would conflict with that duty, and interfere with its faithful performance. This is poor policy.

*Koch*, 627 S.E.2d at 638–39 (quoting *Sanchez v. Lindsey Morden Claims Servs., Inc.*, 84 Cal. Rptr. 2d 799, 802 (Ct. App. 1999)).

Though the North Carolina Supreme Court has not squarely addressed the question presented in *Koch*, the highest court has substantively engaged with and relied on the case. *Cedarbrook Residential Ctr., Inc. v. N.C. Dep't of Health & Human Servs.* considered whether a regulated entity is entitled to sue for negligence the agency responsible for regulating it, pursuant to North Carolina's State Tort Claims Act. 881 S.E.2d 558, 561–62, 583–84 (N.C. 2022) (citing *Koch*, 627 S.E.2d at 638–39). The court held that the Department of Health and Human Services did not owe the plaintiff, a residential living facility, "a legally recognized duty sufficient to support a negligence claim." *Cedarbrook*, 881 S.E.2d at 580. Finding otherwise, the court reasoned, would result in the "particularly troubling" creation of conflicting duties, evidenced in "situations like this one, in which the principal concern motivating the creation of the relevant regulatory regime was the protection of the *residents* of adult care homes rather than the *entities* that own and operate them." *Cedarbrook*, 881 S.E.2d at 584 (emphasis added). In support, the court cited *Koch* for "declining to recognize the existence of a duty between an insurance adjuster and a claimant" because imposing such a duty would "subject the adjuster to conflicting loyalties." *Cedarbrook*, 881 S.E.2d at 583–84 (citation omitted). In other words,

9

*Cedarbrook* cites *Koch* not in passing, but for a central principle that requires embracing *Koch*'s main holding—suggesting that the Supreme Court approved the Court of Appeals's decision.

Again, this Court must follow the decision of an intermediate state appellate court "unless there is 'persuasive data' that the highest court would decide differently"—but here, *Cedarbrook* indicates that North Carolina's highest court would decide *identically* the question of whether a duty of care is owed by an insurance adjuster to a claimant. *See Little*, 52 F.3d at 498 (citing *Lynch*, 775 F.2d at 580). We see no persuasive data to the contrary. We conclude, therefore, that under North Carolina law, an independent insurance adjuster owes no duty of care to a claimant against the underlying insurance policy.[5]

### B.

This leaves us to evaluate the appellant's sole claim, a single count of negligent misrepresentation brought by a third-party claimant who is not the insured against an independent insurance adjuster and its employee. The tort requires that NARS and Scroggs owed EHC a duty of care. *Dallaire*, 760 S.E.2d at 267. North Carolina law instructs us that no such duty exists. *Koch*, 627 S.E.2d at 638–39. Accordingly, EHC cannot sustain a negligent misrepresentation action against NARS and Scroggs because the plaintiff has

---

[5] That *Koch* addressed a pure negligence claim rather than a negligent misrepresentation claim does not alter the analysis. Both torts require a fundamental duty of care owed by the defendant to the plaintiff, regardless of the additional element of justifiable reliance required in the negligent misrepresentation context. *See Value Health Sols., Inc.*, 891 S.E.2d at 113.

not pleaded—and indeed, *cannot* plead—a fundamental element of the claim. *See* Fed. R. Civ. P. 12(b)(6).

Because the district court properly held that NARS and Scroggs owed no duty of care to EHC under North Carolina law, it correctly granted the defendants' motion to dismiss for failure to state a claim. We decline to reach the merits of whether EHC adequately pleaded justified and direct reliance, or whether North Carolina's statute of frauds bars EHC's claim. Ruling on these questions would not change the outcome here.

III.

For the foregoing reasons, the district court's decision dismissing EHC's complaint for failure to state a claim for negligent misrepresentation under North Carolina law is

*AFFIRMED.*